FRANK BRUCE STEVENS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE AND THIOKOL CORPORATION, Respondents
Stevens v. Commissioner
Docket No. 1900-78R.
United States Tax Court
T.C. Memo 1985-192; 1985 Tax Ct. Memo LEXIS 441; 49 T.C.M. (CCH) 1261; T.C.M. (RIA) 85192; April 18, 1985. Frank Bruce Stevens, pro se. Howard Philip Newman, for respondent Commissioner. E. A. Dominianni, for respondent Thiokol Corporation. GERBER
MEMORANDUM OPINION GERBER, Judge:* The Commissioner of Internal Revenue (Commissioner), one of the respondents in this case, issued a favorable determination letter that the retirement income plan, as adopted and amended by respondent Thiokol Corporation (Thiokol), met the requirements of section 401(a). [1]
*448 Petitioner, Frank Bruce Stevens, challenges respondent Commissioner's determination and has invoked the jurisdiction of this Court for a declaratory judgment under section 7476. The issues presented for decision are: (1) Whether respondent Thiokol violated the reporting and disclosure requirements of ERISA; (2) Whether a plan that becomes noncontributory must refund employee contributions made prior to the amendment even if the participant is presently employed; (3) If a plan must refund employees' prior contributions, must the plan pay more than the minimum rate of interest; (4) Whether a plan must allow an employee to elect out of mandatory employer contributions; (5) Whether a plan must allow a surviving spouse to elect the form of benefits; (6) Whether a plan may integrate with Social Security; and (7) Whether a plan is discriminatory when all employees are covered under mandatory employer contributions and all participants will receive the same benefits regardless of whether some members previously elected not to contribute. This case was submitted for decision on the certified administrative record pursuant to Rule 217(b)(1). The certified administrative *449 record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by this reference. Petitioner resided in Brigham City, Utah, and was an employee of respondent Thiokol Corporation [2] at the time of filing the petition in this case. Respondent Thiokol's principal office, at the time the petition was filed, was located in Newton, Pennsylvania. Thiokol provided a retirement income plan (Plan) to eligible employees. After enactment of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, Thiokol amended the Plan. The amendments were effective October 1, 1975, and October 1, 1976. The Plan amendments provided for: (1) The discontinuance of employee contributions; (2) a change in the Plan's level of integration with Social Security; (3) a change in the minimum annual benefit formula for final average earnings; (4) a new minimum monthly benefit; (5) a pre-retirement *450 spousal benefit; (6) a revision in the method of funding from a group deferred annuity contract to an immediate participation guarantee contract; and (7) certain other technical changes required by ERISA. Specifically, the first Plan amendment provided for discontinuance of employee contributions effective October 1, 1975. From the Plan's inception on October 1, 1951 until September 30, 1975, participants elected to contribute a percentage of their earnings and Thiokol, as employer, matched the contribution. Both employee and employer contributions prior to October 1, 1975, were purchased jointly in accordance with applicable tables contained in the Plan, as amended. The Plan, both before and after amendment, did not contain any provision permitting the refund of employee contributions with interest until a participant's service or employment ceased. Upon termination of employment prior to retirement, however, employee contributions were available in the form of cash with interest payable at 4 percent per annum compounded annually. The second Plan amendment concerned a pre-retirement spousal benefit. This amendment was generally effective October 1, 1975, and allowed the participant *451 to elect or to waive the benefit. If the participant was married at least one full year prior to his death, the spousal benefit was automatic unless the participant had waived the benefit in writing during his lifetime. The surviving spouse did not have the right to waive or elect not to waive the benefit; only the participant could make the waiver. Employees were advised of this Plan revision on October 28, 1975. Because no prior notice was distributed to the employees, Thiokol permitted a surviving spouse of any employee who died between October 1 (the effective date) and October 28 (the date notice was posted) to make an election to waive the benefits. In addition, the Plan was amended to revise the method of funding the plan from a group deferred annuity contract to an immediate participation guarantee contract. Under the revised Plan, all employees became Plan members automatically as of the date they completed certain eligibility requirements. Thiokol, as employer, made all contributions to the Plan after October 1, 1975, and employees made no contributions in their own behalf. All contributions made before that date remained in the fund in the same manner as prior to *452 the amendment. Employer contributions were based on actuarial recommendations provided by an enrolled actuary. The actuarial tables enabled the Plan to be a defined benefit Plan where all participants would receive the same rate per year of service on retirement regardless of years of service and pre-retirement contributions. With respect to integration with Social Security, the Plan adopted a career average formula of 1-1/4 percent of annual earnings note in excess of the Social Security taxable wage base plus 2-1/4 percent of annual earnings in excess of the Social Security taxable wage base. The revised Plan provided a new minimum monthly benefit annuity of $8 a month for each year of service retroactive to the time an employee elected to join the Plan. The minimum annual benefit was also retroactively changed to based the final pay benefit to the average of the highest 60 consecutive months of the 10 years prior to retirement. The Plan revised the maximum annual benefits from $50,000 to $75,000. The Plan, both prior to and after amendment, provided that at retirement, either early or normal, a participant's retirement income is the greater of (1) the basic retirement income, *453 (2) the minimum annual benefit, or (3) the minimum monthly benefit. The Plan also provided that the maximum yearly retirement income payable to any participant is the lesser of $75,000, or the ERISA prescribed maximum. These distinct segments of the benefit formula are applicable to all participants and the participants have no option for selection. On or before December 20, 1976, Thiokol posted a notice of proposed amendment to their Plan on a bulletin board at Thiokol's office. On December 28, 1976, Thiokol filed an application for determination of defined benefit plan with respect to the Plan. Petitioner sent a comment letter to respondent Commissioner during late February or early March 1977 with respect to proposed changes to the Plan. Prior to this time petitioner and other interested parties wrote to Thiokol and the Department of Labor. The other interested parties also wrote to the Commissioner. Petitioner made the following allegations in arguing that Thiokol's Plan should not be granted a favorable determination: (1) Thiokol had failed to provide "all plan documents" for petitioner's examination; (2) petitioner could not withdraw his contributions, with interest, *454 during the time he was actively employed; (3) the new spousal benefit unfairly discriminates against participants who failed to waive this benefit; (4) Thiokol used interest rates in its calculations resulting in a loss to participants; (5) the new Plan requires all eligible employees to become members although the old Plan allowed employees to elect participation; (6) the Plan's integration with Social Security was improper; (7) the Plan uses improper funding methods; and (8) certain retroactive benefit increases discriminate against most employees. On April 28, 1977, the Commissioner requested Thiokol to answer questions raised by petitioner and other interested parties. Thiokol responded to the Commissioner's request and answered petitioner's questions on May 13, 1977. On October 3, 1977, the Commissioner issued an initial favorable determination letter to Thiokol. On November 25, 1977, the Commissioner issued a second or final favorable determination letter to Thiokol and advised petitioner that Thiokol had received a favorable determination letter. [3] In this second or final favorable determination, the Commissioner provided notification and enclosures. The Commissioner *455 determined that the Plan, as amended, qualified under section 401(a) and that the trust was exempt from taxation under section 501(a). On February 23, 1978, [4] petitioner filed a petition with this Court seeking a declaratory judgment under section 7476, thus invoking the jurisdiction of this Court, as to the favorable determination letter issued to Thiokol. [5]
*456 Pro se petitioner charges, without citing statutory or case law, that the Plan is unfair and discriminatory and consequently asserts that the Commissioner erred in issuing a determination letter that the Plan qualifies under section 401(a). In essence, petitioner claims that if the District Director had examined the information submitted in connection with the application for qualification of the revised Plan, then the District Director would not have issued a favorable determination letter. Petitioner has been diligent in seeking redress from respondent Commissioner and by invoking the jurisdiction of this Court. Although petitioner appears to have sincere and appropriate concerns, he has misconceived respondent Commissioner's function in reviewing the qualification of revised plans. One of the Commissioner's basic functions is to determine whether the plan or revised plan meets the minimum requirements of the law. That determination, although it may seem unacceptable to Plan participants, may be correct as it relates to the statutory criteria. Such a determination is based upon *457 the formation submitted to the Commissioner and not upon an independent investigation of the facts. For purposes of the determination, the submitted information is accepted as correct. Oakton Distributors, Inc. v. Commissioner,73 T.C. 182, 194 (1979); Thompson v. Commissioner,71 T.C. 32, 37 (1978); sec. 601.201, Statement of Procedural Rules. Accord, Tamko Asphalt Products, Inc. v. Commissioner,71 T.C. 824, 837 (1979), affd. 658 F.2d 735, 739 (10th Cir. 1981); Houston Lawyer Referral Service v. Commissioner,69 T.C. 570, 573 (1978). Therefore, respondent Commissioner was not required to independently examine and analyze the Plan in order to determine whether the information provided on the application for qualification of the Plan was correct. Similarly, this Court's decision "will be based upon the assumption that the facts as represented in the administrative record * * * are true." Rule 217(b)(1). See Note to Rule 217(a), 68 T.C. 1048 (1977) and, e.g., Sutherland v. Commissioner,78 T.C. 395, 397 (1982); *458 Fujinon Optical, Inc. v. Commissioner,76 T.C. 499, 500 (1981). As stated in the legislative history to section 7476, the Tax Court is to base a decision upon a redetermination of the Commissioner's determination and not on a general examination of the provisions of the Plan or related trust. H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 343; S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 193. [6] In reviewing a determination by the Commissioner regarding qualification of a plan, this Court is generally restricted to deciding "whether the Commissioner, in making his determination, properly applied the law to the facts presented to him in the request for such determination." Thompson v. Commissioner,supra at 36-37. Congress "did not expect the Tax Court to conduct a trial de novo and make an independent examination of the facts to determine if the subject plan was qualified." Tamko Asphalt Products, Inc. v. Commissioner,supra at 837. *459 The scope of our determination will be with the allegations in the petition which have been previously submitted to the Commissioner rather than with any operational defects in the Plan. Thompson v. Commissioner,supra at 37. Section 7476 is not a broad grant of jurisdiction to the Tax Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies. [7] Rather, section 7476 grants jurisdiction in only narrowly defined circumstances. See Sheppard & Myers, Inc. v. Commissioner,67 T.C. 26 (1976); Thompson v. Commissioner,supra.Thus, we are to decide, based on the administrative record, whether the Commissioner erred in granting a favorable determination based on the information presented with the application for approval. Respondent Commissioner's determination may be overturned only if it is demonstrated to be an abuse of discretion, unreasonable, or arbitrary. Sutherland v. Commissioner,supra at 405; Fujinon Optical, Inc. v. Commissioner,supra at 506-507, *460 and the cases cited therein.
Petitioner advances several claims, each of which will be separately addressed. It should be noted that the questions petitioner presents to this Court are the same questions petitioner presented to both Thiokol and the Commissioner before the favorable determination letter was issued. Because petitioner in this case raises the same issues that he raised in the comments previously filed with Thiokol and the Commissioner, we do not have the jurisdictional question which confronted us in Thompson v. Commissioner,supra.Consequently, the Tax Court has jurisdiction over these issues. 1. Reporting and Disclosure Requirements of ERISA
Petitioner first contends that Thiokol violated the reporting and disclosure requirements of ERISA because Thiokol did not furnish all documents that it was required by law to furnish participants *461 in the Plan. [8] Petitioner contends that none of the retirement plan documents that ERISA requires to be furnished automatically to interested parties was furnished, such as a summary plan description and the latest annual report. [9] In addition, petitioner contends that even though the notice to participants that Thiokol was seeking a favorable determination explained that certain documents were available upon request and at a reasonable cost, Thiokol did not furnish them when petitioner requested. [10] The ERISA sections upon which petitioner relies are part of Title I of the Act which provides the reporting and disclosure requirements to the Department of Labor. [11] Title II of the Act applies generally to qualified plans under the Internal Revenue Code and provides the reporting requirements to and with the Treasury Department. [12] Both Titles I and II have reporting and disclosure requirements. [13] Because this is an action relating to the Plan's qualification under the Internal Revenue Code and the Commissioner's determination, we must determine, based on the administrative record, whether Thiokol complied with the relevant requirements necessary for the Commissioner to *462 determine that the Plan qualified under the Internal Revenue Code. *463 A taxpayer applying to the Commissioner for a determination letter is required to submit evidence to the Commissioner that interested parties [14] have been notified of the application. [15]Secs. 1.7476-1(a), 1.7476-2, Income Tax Regs.; sec. 601.201(o), Statement of Procedural Rules. Cf. Hawes v. Commissioner,73 T.C. 916 (1980) (the requirement that interested parties be notified of the filing of a request for determination is not mandatory in order to confer jurisdiction to this Court). The purpose of the notice provisions is to enable "interested parties" to comment to the Commissioner during the administrative consideration of the application and provides the Commissioner an opportunity to consider the comments made by the employees before the Commissioner rules. *464 Notice must be given to all interested parties in the manner set forth in the regulations under section 7476. Sec. 1.7476-2, Income Tax Regs; sec. 601.201(o)(3)(xiv), Statement of Procedural Rules. Other materials not provided in the notice are to be made available to interested parties in a place or places reasonably accessible, in time for them to pursue their rights within the time period prescribed. Sec. 601.201(o)(3)(xvii) through (xx), inclusive, Statement of Procedural Rules. Such materials include a copy of the plan and the related trust agreement, if any, and the application for determination. [16]Sec. 601.201(o)(3)(xviii), Statement of Procedural Rules. The applicant may exclude Form 5302 (Employee Census). [17]Sec. 601.201(o)(3)(xviii), Statement of Procedural Rules. *465 The notice must be in writing (sec. 601.201(o)(3)(xvi), Statement of Procedural Rules) and when notice is given by posting, the notice must be given not less than 7 days nor more than 21 days prior to the date the application for determination is made (sec. 601.201(o)(3)(xv), Statement of Procedural Rules; Rev. Proc. 80-30, 1980-1 C.B. 685, 692). Notice given by posting must be made by posting such notice at those locations within the principal places of employment of the interested parties which are customarily used for employer notices to employees with regard to labor-management relations matters. Sec. 1.7476-2, Income Tax Regs.
The administrative record reflects that Thiokol distributed a Summary Plan Description to all participants or beneficiaries on or before May 30, 1976. In addition, Thiokol filed the Summary Plan Description with the Department of Labor on July 30, 1976. Copies of the Plan Description were provided to all domestic divisions to be made available for review and copying at a reasonable charge. Thus, Thiokol complied with *466 the requirements of sec. 601.201(o)(3)(xvii) through (xx), inclusive, Statement of Procedural Rules. Thiokol also posted a notice of the submission for an advance determination by December 20, 1976, pursuant to section 601.201(o)(3)(xv), Statement of Procedural Rules. Thiokol also appropriately filed 5500 Series with the Internal Revenue Service and the Department of Labor pursuant to section 601.201(o)(3)(xvii) and (xviii), Statement of Procedural Rules, although Form 5302 was not included. [18] When the Service requested Thiokol to respond to petitioner, Thiokol responded that they had furnished all available documents to petitioner. Petitioner also argues that Thiokol's response was dilatory and in violation of ERISA's 30-day rule [19] and that Thiokol's response providing all the documents was after the deadline for him to furnish comments to the Internal Revenue Service and the Department of Labor. The administrative record reflects, however, that petitioner was able to comment within the commentary period. By providing petitioner with a timely opportunity to comment, Thiokol has complied with the *467 spirit of ERISA's notice and disclosure provisions relating to an application for a determination with the Internal Revenue Service that the Plan qualified under the Internal Revenue Code. Petitioner, relying on the notice, was confused as to what the law requires Thiokol to furnish participants when Thiokol applies for a favorable determination. Petitioner requested all Plan documents. Thiokol provided the Plan Description. Petitioner thought that Thiokol had to furnish more documents. Based on the administrative record, we believe that Thiokol provided a copy of the documents that were available and required to be furnished to a participant when a plan is seeking a favorable *468 determination letter. Accordingly, we find that the Commissioner did not err with respect to this issue. 2. Refund of Employee Contributions
Petitioner argues that he was not informed when he joined the Plan that his contributions, with interest, could not be withdrawn while he was actively employed. It was only when the Plan was revised to require employer contributions for all participants that, petitioner argues, he was informed for the first time that participants could not withdraw their prior contributions while still employed but could only receive their contributions with interest payable at death, retirement, or termination of employment. [20]
Respondent Thiokol responded in its letter to petitioner that the-- Plan as amended * * * effective October 1, 1976, does not contain any provision permitting the refund of employee contributions with interest until the cessation of participant's service. The Prior Plan, similarly, did not contain any such provision, nor is any such provision required by Federal Regulations or Revenue Rulings. In addition, the Commissioner *469 answered petitioner that no Code or Act section requires the refund of employee contributions or interest. We agree with respondents. While an employee must have a nonforfeitable right in his accrued benefit derived from employer contributions, there is no statutory requirement that such contributions be subject to withdrawal at any time upon request. [21]Sec. 411(a)(1). Cf. Rev. Rul. 60-281, 1960-2 C.B. 146; Rev. Rul. 60-323, 1960-2 C.B. 148; Rev. Rul. 67-340, 1967-2 C.B. 147; Rev. Rul. 69-277, 1969-1 C.B. 116 (a qualified plan may allow refunds of employee contributions; the assumption being that refunds are not required). Also, as a condition of qualification, section 401(a) does not require, upon discontinuance of mandatory employee contributions, that the amount of such contributions be refunded to the employee with interest at any minimum rate. *470 3. Interest Rates
Petitioner alleges that the interest rate that the Plan pays is too low and thereby results in a cost savings to Thiokol and a concomitant loss to petitioner and other employees. Petitioner seeks a specific answer to his question whether such a low interest rate is in the best interests of the participants and petitioner also wants to know who had free use of the participant's money each year based on the annually deferred method of compounding interest. Besides answers to his specific questions, petitioner argues that the rate of interest on participants' contributions should be 5 percent instead of 4 percent. [22] In providing such a low interest rate, petitioner argues that respondent Thiokol violated its fiduciary duties and responsibilities. Respondent Commissioner stated and we agree that "[b]ecause contributions to a defined benefit plan are generally based on the amount necessary to fund the actuarial present value of the pension benefit, a lower interest rate assumption will result in the need for *471 higher contributions by the employer to the plan." Thus, a lower interest rate assumption does not, as petitioner suggests, result in a cost savings to Thiokol. See D. McGill, Fundamentals of Private Pensions 345 (4th ed. 1979). We are aware that section 411(c)(2)(C)(iii), in defining accumulated contributions, prescribes that interest shall be compounded annually at a rate of 5 percent per annum. We decline to review whether the rate prescribed under such section is appropriate because we are limited to a consideration of the facts contained in the administrative record. Rule 217. More importantly, as petitioner admits, there is no evidence in the administrative record to establish that the Plan's rate was "too" low in any year. 4. Mandatory Plan Membership
Petitioner questions whether ERISA requires employers to make Plan membership mandatory or does ERISA, instead, merely allow employees to become Plan members when they meet certain age and service eligibility requirements. Petitioner asks "[h]ow can eligible employees or participants refuse plan membership?" Petitioner maintains that the intent of ERISA is to give employees and participants freedom of choice to *472 elect Plan participation rather than deny them freedom of choice by imposing mandatory/compulsory Plan participation. Therfore, petitioner feels Thiokol violated its fiduciary duties and responsibilities and the Commissioner erred in qualifying the Plan. We disagree with petitioner. While petitioner may not have received, in his opinion, an answer to his specific question, we believe both respondents explained the mandatory coverage provision. Petitioner could not refuse membership but petitioner did not have to make any contributions of his own either. Thiokol responded that "[s]ince the Plan became non-contributory on October 1, 1975, employees [became] Plan members automatically as of the date they complete[d] all of the conditions for eligibility. Also, each participant under the Plan or prior Plan will continue to be a participant under this Plan as indicated." We believe that this response informed petitioner that under the Plan, as amended, he could not waive participation because employees are generally eligible for participation after a minimum period of service, [23] and no election on behalf of an employee is required in order for the employee to be covered. *473 No provision of the Code or ERISA requires an employee to be covered under a noncontributory employee pension plan or grant an employee the opportunity to waive participation. [24] See Orzechowski v. Commissioner,69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979). In fact, the minimum participation standards in section 410 are designed to ensure that rank and file employees are not excluded from participation in a qualified plan. It necessarily follows that a plan which provides mandatory coverage for all employees satisfies the requirements of sec. 410. We also have not found nor has petitioner cited any Code or Act section that requires a plan to allow employees to elect to be or not to be covered. See Orzechowski v. Commissioner,supra at 754. Thus, we conclude that the Commissioner did not err in approving this amendment. *474 5. Surviving Spouse Benefit
The Plan provides for a joint and survivor annuity benefit which petitioner refers to as a "spouse benefit." The benefit is received by a surviving spouse of an employee who dies while still employed, and provides for payment through an annuity in joint and survivor form unless the employee elects another form of payment in writing. Petitioner argues that the Plan operates unfairly because a surviving spouse is not able to elect the form of the joint and survivor annuity benefit. The Plan only allows the participant (and not the spouse) to waive the benefits. Both respondents answered that the Code does not require that a surviving spouse be entitled to a right to elect out of automatic coverage. A qualified plan that provides for payment of benefits in the form of an annuity must provide those benefits in a form having the effect of a qualified joint and survivor annuity. Sec. 401(a)(11). Section 401(a)(11) does not require that the employee's spouse be given the right to elect the form of payment. Because the Plan permits participants to elect *475 not to have this benefit paid in the form of a joint and survivor annuity pursuant to section 401(a)(11)(E), we believe that the Plan remains qualified even though the surviving spouse does not have the right under the Plan to determine the type of payment he may want. See BBS Associates, Inc. v. Commissioner,74 T.C. 1118 (1980), affd. without published opinion 661 F.2d 913 (3d Cir. 1981). Petitioner further argues with respect to the joint and survivor annuity provision of the Plan that Thiokol failed to explain the effect of this provision to employees before it went into effect. Notice of the proposed change was posted on October 28 and was effective October 1. Petitioner argues, therefore, that this violates ERISA with respect to a "reasonable period" and thus the Commissioner erred in failing to recognize this when he qualified the Plan. Respondents answered, however, that Thiokol allowed an election by the surviving spouse of an employee who died between October 1 and October 28 to elect to waive the form of the benefit. We agree, as respondent Commissioner found, that the Plan is in compliance with the law. Because the surviving spouses *476 during such period were allowed to elect and because petitioner had the opportunity to comment before the Plan was approved (his comments appear in the administrative record), we conclude that the Commissioner did not err in approving this amendment. Petitioner again argues under this issue that Thiokol did not provide sufficient, understandable literature or a sufficient explanation of the pre-retirement surviving spouse's provisions. Again, petitioner argues that Thiokol violated the clear disclosure and fiduciary duties and that the Commissioner erred in recognizing this when he qualified the Plan.He also argues that neither respondent has answered his question of "whether Thiokol has explained this provision clearly?" With respect to petitioner's question, both respondents explained the legal provisions to petitioner and appropriately answered his questions. Both respondents in written responses to petitioner stated that the Code does not require that a surviving spouse be entitled to a right to elect out of automatic coverage. The Plan allows only the participants (and not the spouse) to waive the automatic benefits. We feel these responses adequately answer petitioner's *477 question and that the Commissioner did not err with respect to this amendment. 6. Integration with Social Security
Petitioner argues that because the Plan is integrated with Social Security, the participants' benefits will decrease and this seems unfair. [25]
*478 Section 401(a)(5) authorizes integration of benefits for both defined benefit pension plans and profit-sharing plans with Social Security. Integration allows the employer operating a qualified pension or profit-sharing plan to take into account the benefits provided to employees under Social Security and to get credit for the employer's portion of the Social Security tax. [26]Sec. 1.401-3(e)(2)(i), Income Tax Regs.; Rev. Rul. 71-446, 1971-2 C.B. 187, clarified in Rev. Rul. 78-92, 1978-1 C.B. 118; Rev. Rul. 72-492, 1972-2 C.B. 222. [27] In summary, integration is a method of equalizing benefits for the higher-paid, rather than granting the higher-paid additional benefits. *479 The Commissioner's Rev. Rul. 71-446, supra, provides guidelines for determining whether a plan is properly integrated with benefits provided by Social Security. Section 6.02 of Rev. Rul. 71-446, 1971-2 C.B. at 190, requires that the maximum allowable differential for a unit benefit excess plan based on benefits on actual compensation cannot exceed 1.4 percent. Section 7 of Rev. Rul. 71-446, 1971-2 C.B. at 190, provides that an offset plan is integrated if the rate at which the offset to any employee's benefit is computed does not exceed 83-1/3 percent. Because the Plan's integration levels are equal to or less than the maximum differentials, we find that the Plan is properly integrated with Social Security and in compliance with the law and administrative rulings. Accordingly, the Commissioner did not err with respect to this amendment. 7. Method of Funding the Plan
The Plan was amended to eliminate employee contributions and to extend Plan membership to all eligible employees. Petitioner alleges that these changes unfairly discriminate *480 against the majority [28] of employees. Therefore, because all employees will receive the same benefits, petitioner feels that the contributions before revision are being used to subsidize benefits for new participants under the revised Plan. [29] In essence, petitioner is arguing that employees who did not elect to contribute before the Plan revisions (the minority) are getting an unfair advantage over the majority of the employees who elected to contribute to the Plan before revision because all employees will receive the same benefit. Petitioner agains finds no law or Code reference to support his position but he feels "it certainly seems to be unfair, inequitable, and discriminatory to the majority of the participants." Thus, petitioner alleges that the changes in the manner in which the Plan calculates retirement benefits discriminate against the majority of Plan participants. [30]
*481 Contributions or benefits provided under a qualified plan may not discriminate in favor of employees who are officers, shareholders, or highly compensated. Sec. 401(a)(4). A plan is not to be considered discriminatory because contributions or benefits bear a uniform relationship to total compensation. Sec. 401(a)(5). Nor does variation in contributions or benefits among employees constitute discrimination unless such variation discriminates "in favor of employees within the enumerations with respect to which discrimination is prohibited." Sec. 1.401-4(a)(2)(iii), Income Tax Regs. See also sec. 1.413-1(c)(2), Income Tax Regs.
Applying this to the facts of the case, we agree with the Commissioner that a minimum monthly benefit may provide additional benefits to the lower-paid rank and file employees, but cannot provide extra benefits to officers, shareholders, or the highly compensated. Nor is there any indication that basing the minimum monthly benefit on an average of the highest 60 consecutive months' earnings will in any way *482 provide additional benefits to the prohibited group. In addition, increasing the maximum annual benefit to reflect the maximum benefit allowed by section 415(b) is necessarily consistent with the Code. [31]
We agree with the Commissioner's and Thiokol's answers to petitioner. All contributions remain in the fund in the same manner as before revision. Thiokol's contributions post-revision are based on actuarial recommendations provided by an enrolled actuary pursuant to section 412. The fund was for the exclusive benefit of the participants and all persons who may become entitled to benefits under the Plan in accordance with section 401(a). Because the provisions are applicable to all participants, the Plan is thereby precluded from discriminating against any participant in the payment of benefits. Additionally, although petitioner alleges that the Plan discriminates against the majority of participants, petitioner has neither alleged nor set forth facts which would suggest that those receiving greater contributions or benefits are officers, shareholders, *483 or highly compensated; in other words, the prohibited group. Therefore, petitioner's argument, on its face, does not allege discrimination within the meaning of section 401(a)(4). Compare Jobusch v. Commissioner,68 T.C. 929, 939-942 (1977), affd. sub nom. Friedman & Jobusch v. Commissioner,627 F.2d 175 (9th Cir. 1980); McMenamy v. Commissioner,54 T.C. 1057, 1061-1065 (1970), affd. 442 F.2d 359 (8th Cir. 1971). Although it may appear to petitioner that it is unfair that those who paid nothing should receive the same amount as those who had contributed prior to the Plan amendment, the changes in the Plan do not lessen the amount that petitioner and other contributors would have received had there been no amendment. In conclusion, petitioner questions, in several different contexts, the fairness of the Plan revisions. The standard by which we must decide this case is not fairness, however. The issue to be addressed and the standard by which we must make our decision is whether the Commissioner erred in determining that the amendments complied with the Code's requirements.After careful consideration of petitioner's *484 arguments and a careful review of the entire administrative record in this case, we hold that respondent Commissioner did not err in determining that the Plan qualifies under section 401(a) and that the accompanying trust qualifies as a tax-exempt entity under section 501(a). An appropriate decision will be entered.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Special Trial Judge Helen A. Buckley to Judge Joel Gerber↩ for disposition. 1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Subsequent to the filing of the petition in this case, Thiokol Corporation merged with Morton-Norwich Products, Inc., effective Sept. 24, 1982; the new company name is Morton Thiokol Inc., with its principal place of business in Chicago, Illinois.↩
3. Petitioner argues that the initial determination was improper because it was not signed, did not provide proper notification to interested parties, and did not include enclosures. Respondent Commissioner answers that the second or final determination was issued in order to ensure that interested parties had an opportunity to petition this Court. Because most plans involve both an initial and final determination by the Commissioner, petitioner's argument does not affect the outcome of this decision.↩
4. While the time since petitioner filed the petition has been lengthy, most of the time was spent addressing procedural matters. For a number of years numerous motions, hearings and corresponding orders were either filed or held relating to changing the caption, joining parties, enlarging and supplementing the administrative record, and requesting that the place of trial be changed. ↩
5. Petitioner has satisfied the relevant prerequisities for this declaratory judgment action: petitioner is an employee who qualifies as an interested party, sec. 7476(b)(1); petitioner has exhausted his administrative remedies, as evidenced by respondent's final favorable determination letter dated Nov. 25, 1977, sec. 7476(b)(3), the Plan and its amendments were put into effect, sec. 7476(b)(4); and a timely petition with this Court was filed on Feb. 23, 1978, sec. 7476(b)(5)↩.
6. All page references to H. Rept. 93-807, S. Rept. 93-383, and Conf. Rept. 93-1280 will be to pages in the Cumulative Bulletin whether such reports are published.↩
7. The limited jurisdiction of this Court is succinctly described in the legislative history concerning section 7476 as follows: The Tax Court is to have jurisdiction to declare whether a plan is, or is not, a qualified plan * * *. [S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 193.]↩
8. Petitioner cites sec. 3001 of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, 995. ↩
9. Petitioner rightfully points out that certain provisions of ERISA require plan administrators to furnish documents to participants. Petitioner's argument depends, however, upon sections of ERISA that are under the jurisdiction of the Department of Labor and codified in Title 29 of the United States Code. Accordingly, we lack jurisdiction to determine whether Thiokol complied with those requirements. See Automated Packaging Systems, Inc. v. Commissioner,70 T.C. 214, 216-221 (1978), where this Court discusses the legislative history and the interrelationship between the Internal Revenue Service and the Department of Labor with respect to secs. 410(a), 411, and 412 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively). We will make references to Title 29 only to help understand petitioner's argument. For example, a plan administrator generally is required to furnish each participant a summary plan description and the latest annual report. ERISA, sec. 101(a), 29 U.S.C. sec. 1021(a) (1976); 29 C.F.R. sec. 2520.102-3 (1977), Dept. of Labor Regs. Copies of the plan description and the latest annual report shall be made available for examination by any participant in the principal office of the administrator and in such other places as may be necessary to make all pertinent information available to all participants. ERISA, sec. 104(b)(2), 29 U.S.C. sec. 1024(b)(2) (1976); 29 C.F.R. sec. 2520.104(a)-2↩ (1977), Dept. of Labor Regs. 10. Upon written request of any participant, the administrator shall furnish a copy of the latest updated summary plan description, plan description, the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. ERISA, sec. 104(b)(4), 29 U.S.C. sec. 1024(b)(4) (1976); 29 C.F.R. sec. 2520.102 (1977), Dept. of Labor Regs. The administrator may charge a reasonable fee for furnishing such copies. ERISA, sec. 105(a), 29 U.S.C. secs. 1025(a) and 1132(c) (1976); 29 C.F.R. sec. 2520.104 (1977), Dept. of Labor Regs. Petitioner also asserts that Thiokol violated its fiduciary duty to present information in an understandable manner. See ERISA, sec. 102(a)(1), 29 U.S.C. sec. 1022(a)(1) (1976); 29 C.F.R. sec. 2520.102-2(a) (1977)↩, Dept. of Labor Regs. ERISA, sec. 102(a)(1) provides that "[a] summary plan description * * * shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 11. ERISA, sec. 104(c), authorizes the Secretary of Labor to issue regulations relating to the reporting and disclosure requirements. The Secretary of Labor has exercised his authority to promulgate regulations in 29 C.F.R. sec. 2520.503-1↩ et seq. (1977), Dept. of Labor Regs. 12. For a discussion of the reporting and disclosure requirements, see T. Monfried & J. Karas, Jr., "Reporting and Disclosure Requirements," Folio 3 in Series D of Rules for Operation of Qualified Plans in Pension and Profit-Sharing Plans (D. Rothman ed. 1979). ↩
13. The administrator must file an annual report with the Labor Department for each covered employee benefit plan. ERISA, sec. 101(b)(4), 29 U.S.C. sec. 1021(b)(4) (1976); ERISA, sec. 103, 29 U.S.C. sec. 1023 (1976); ERISA, sec. 104, 29 U.S.C. sec. 1024 (1976). Similarly, the employer or the plan administrator of qualified and other deferred compensation plans covered by Code secs. 401 through 415, inclusive, must file an annual return with the Internal Revenue Service. Sec. 6058(a)↩ (ERISA, sec. 1031). Pursuant to ERISA, sec. 3004 (88 Stat. 998), the Labor Department and the Internal Revenue Service have developed a joint annual information report/return, Forms 5500, 5500-C, 5500-K and Schedules A and B thereto.
14. Interested parties are defined in sec. 1.7476-1(b), Income Tax Regs.↩, to include all present employees who are eligible to participate in the plan. Accordingly, petitioner in this case qualifies as an interested party. 15. The information to be contained in the notice and the requirements concerning the timing of the notice are set forth in Rev. Proc. 80-30, 1980-1 C.B. 685, 692, and sec. 601.201(o)↩, Statement of Procedural Rules.
16. Other materials may include an explanation of the rights of interested parties and generally the comment letters submitted by other interested parties or the Department of Labor for the benefit of other interested parties. ↩
17. Generally, a Form 5302 may be excluded because the form deals with confidential information such as salaries. Rev. Proc. 80-30, 1980-1 C.B. at 693↩; 2 Young, Pension and Profit Sharing Plans, sec. 8.04, p. 8-11 (1977).
18. See footnote 17, supra,↩ as to why this form was not required.
19. Petitioner again relies upon a section in Title 29. ERISA, sec. 502(c), 29 U.S.C. secs. 1025(a) and 1132(c) (1976)↩. ERISA, sec. 502, provides that a plan administrator of a pension plan must furnish a statement to the participant within 30 days of the participant's written request, setting forth the participant's accrued benefits under the plan. The only relevant timing concerns for our determination are whether the documents were provided in time for petitioner to comment.
20. Petitioner cites ERISA, sec. 404, that deals with the fiduciary's responsibility.↩
21. Some pension plans permit a participant to withdraw his required contributions with interest during employment. Such pension plans generally provide that an employee who withdraws during employment cannot reenter the plan at any future date. D. Rothman, "Contributions to Plans" Folio 3 in Series B of Basic Concepts of Qualified Plans in Pension and Profit-Sharing Plans 16 (D. Rothman ed. 1979).Tax problems may arise, however. See 1 Young, Pension and Profit Sharing Plans, sec. 6.13, pp. 6-68 to 6-70.2 for a discussion of the problems and arguments.↩
22. Petitioner cites ERISA, sec. 1012 which has been codified into sec. 411. Sec. 411↩ deals with a different issue as explained in the text.
23. We note that petitioner is not arguing that the Plan does not comply with the minimum vesting requirements of sec. 411(a). Thus, we need not decide whether the Plan provides for the nonforfeitability of an employee's right to his retirement benefit upon attaining normal retirement age under the controlling case of Caterpillar Tractor Co. v. Commissioner,72 T.C. 1088↩ (1979). 24. A plan will be qualified only if it satisfies the minimum participation of sec. 410 in that it must either (1) cover a specified percentage of employees or (2) not discriminate in favor of officers, shareholders, or highly compensated individuals. Secs. 401(a)(3) and 401(a)(4)↩. Allowing for voluntary waiver of participation in a plan otherwise qualified under the Code might result in a plan's failure to meet the coverage requirement thereby causing it to lose its qualified status.
25. Petitioner initially questioned whether the Plan's integration with Social Security complied with the latest Internal Revenue Service ruling because it was his understanding that some revenue ruling banned integration with Social Security. We agree with respondent Commissioner that petitioner merely questions whether Rev. Rul. 71-446, 1971-2 C.B. 187, remains the law under ERISA. After ERISA was passed, the Commissioner updated and clarified Rev. Rul. 71-446, supra, in Rev. Rul. 78-92, 1978-1 C.B. 118.Social Security integration is still permissible. Sec. 401(a)(5)↩. The later ruling simply reflects changes made by the Social Security Amendments of 1977, Pub. L. 95-216, 91 Stat. 1509. Because petitioner agrees that if the ruling is effective he has no real dispute, we need not discuss this issue further.
26. The integration rules are extremely complicated. They are intended to prevent benefit discrimination in favor of highly paid employees by providing that plan benefits for higher paid employees are not disproportionate to benefits for lower paid employees under the plan and Social Security combined. Although petitioner points out that ERISA, sec. 1012(b)(1)(G) (i.e., sec. 401(a)(5)) states that "a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if the participant's accrued benefit is reduced on account of any increase in his age or service", sec. 401(a)(5)↩ provides that a plan is not discriminatory merely because the contributions or benefits of or on behalf of the employees under the Plan "differ because of any retirement benefits created under the State or Federal law." 27. It has always been acceptable to integrate by following the formula set forth in Rev. Rul. 71-446, 1971-2 C.B. 187↩. J. Woyke & S. Field, "Qualified Plans--Integration," 356 Tax Management A-7 (1979).
28. Majority, to petitioner, means over 50 percent and not the prohibited group. ↩
29. Petitioner alleges that the revised Plan subsidizes the new members with respect to the interest rate difference, and also subsidizes nonexempt or hourly paid employees by providing and funding a disability benefit. ↩
30. These changes include establishment of a new minimum monthly benefit of $8.00 per month for each month of service; basing the minimum annual benefit on the average earnings of the highest 60 consecutive months during the 10 years prior to retirement; and increasing the maximum annual benefit which may be paid to any employee from $50,000 to the maximum amount permitted by section 415(b).↩
31. Payment of benefits from a defined benefit plan in excess of the sec. 415(b) limitations is prohibited. Sec. 401(a)(16)↩.