In re George & Georgia Susan COPULOS, Debtors.

Bankruptcy No. 96–33290.

United States Bankruptcy Court, D. New Jersey.

June 30, 1997.

Peter Broege, Broege, Neumann, Fischer & Shaver, Manasquan, NJ, for Debtors.

Robert Nies, Wolff & Samson, Roseland, NJ, for First Indemnity of America Ins. Co. and Universal Bonding Ins. Co.

Karen Bezner, Scotch Plains, NJ, for Chapter 7 Trustee.

## MEMORANDUM OPINION

KATHRYN C. FERGUSON, Bankruptcy Judge.

This matter comes before the court on two motions, one to strike or modify Debtors' claimed exemption of a Pension Plan, and the other to fix pension benefits reasonably necessary for support of the Debtors. Debtors cross move for a declaration that the Pension Plan is not property of the Estate. Although the parties raise many interesting issues under section 522(d)(10)(e), the court's conclusion that statutory restrictions on transfer of the funds contained in the Pension Plan are sufficient to exclude the assets from the estate under section 541(c)(2) obviates the need to address those issues.

### FACTUAL BACKGROUND

George and Georgia Susan Copulos ("Debtors") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 19, 1996. In Schedule B, the Debtors listed a pension plan maintained by Associated Mechanical Systems, Inc. ("AMS Plan") as an asset producing monthly distributions of $4,370.00. On August 15, 1996, the Debtors amended Schedule B to indicate that the AMS Plan was not property of the estate pursuant to section 541(c)(2) of the Bankruptcy Code.

First Indemnity of America Insurance Company and Universal Bonding Insurance Company ("Sureties") filed the within motion to fix pension benefits reasonably necessary for the support of the Debtors and their dependents. In response to that motion, the Debtors claimed that the AMS Plan never became property of the estate, since it was both ERISA and tax qualified. In support of their position, the Debtors submitted copies of three favorable determination letters issued by the Internal Revenue Service ("IRS") reflecting that the AMS plan constituted a "qualified trust" under the terms of the Internal Revenue Code. The Sureties then moved to strike or modify the exemptions claimed by the Debtors. As a result of the submissions, the court scheduled an evidentiary hearing on the limited issue of whether the AMS plan had, as claimed by the Sureties, subsequently lost its qualified status.

On November 6, 1996, the parties presented their evidence. The focus of the evidence was qualification of the AMS Plan under both the Employee Retirement Income Security Act ("ERISA") and the Internal Revenue Code. Specifically, the evidence revealed an $80,000 distribution from the AMS Plan to the Debtors in 1994 in violation of the terms of the AMS Plan, and the failure of the AMS Plan to bond that transaction.

## DISCUSSION

### I. Section 541 Defines Property of the Estate and its Exceptions

■ The Bankruptcy Code defines property of the estate to include "all legal and equitable interests of the debtor in property as of the commencement of the case" 11 U.S.C. § 541(a). The only exceptions are those provided in subsections (b) and (c)(2). Section 541(c)(2) provides that:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankrupt-

cy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). In other words, interests of a debtor in property that are subject to enforceable restrictions on transfer under nonbankruptcy (i.e., state or federal) law are excluded from the definition of property of the estate, and never become part of the debtor's bankruptcy estate. *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

### II. *N.J.S.A.* 25:2–1 Restricts Transfer by Reference to Federal Tax Law

■ At the time the parties presented their evidence, the Third Circuit had not yet rendered its decision in *In re Yuhas*, 104 F.3d 612 (3d Cir.1997), *cert. denied,* —— U.S. ——, 117 S.Ct. 248, 138 L.Ed.2d 990 (1997), and the state of the law was considerably more unsettled. It may be that federal law, without a state statute, requires a pension plan to qualify under both ERISA and the Internal Revenue Code in order to qualify as exempt.[1] Post–*Yuhas*, however, it is clear that when New Jersey law applies, a plan need only meet the requirements of a "qualified trust" under the Internal Revenue Code in order to be excluded from the estate pursuant to section 541(c)(2) and *N.J.S.A.* 25:2–1(b).

■ *N.J.S.A.* 25:2–1(b) provides that:

[a]ny property held in a qualifying trust and any distributions from a qualifying trust, regardless of the distribution plan elected for the qualifying trust, shall be exempt from all claims of creditors and shall be excluded from an estate in bankruptcy ... for purposes of this section, a "qualifying trust" means a trust created or qualified and maintained pursuant to federal law, including, but not limited to section 401, 403, 408, or section 409 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 401, 403, 408, or 409)

Section 1b exempts any property held in a "qualifying trust" from the claims of credi-

---

**1.** The court acknowledges substantial debate on this topic under federal law. *See, e.g., In re Hall,* 151 B.R. 412 (Bankr.W.D.Mich.1993); *In re Hanes,* 162 B.R. 733 (Bankr.E.D.Va.1994); *In re Bennett,* 185 B.R. 4 (Bankr.E.D.N.Y.1995); *In re*

*Harris,* 188 B.R. 444 (Bankr.M.D.Fla.1995); *In re Conner,* 73 F.3d 258 (9th Cir.1996) *cert. den.* —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996).

tors. "Qualifying trust" is statutorily defined to include trusts created or qualified and maintained under section 401 of the Internal Revenue Code. Section 401 provides:

> (a) requirements of qualification. A trust created or organized in the United States and forming part of a stock bonus, pension, or profit sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section. Qualified pension plans are governed by this section.

26 U.S.C. § 401(a). It is clear from the plain language of the statutes that if a plan meets the requirements of a "qualifying trust" pursuant to section 401 of the Internal Revenue Code, transfer of its corpus is restricted by *N.J.S.A.* 25:2–1(b).

▇ In *Yuhas,* the Third Circuit squarely held that the restrictions imposed by *N.J.S.A.* 25:2–1(b) were enforceable restrictions on transfer such as to bring trusts described in the state statute within 541(c)(2)'s exception to 541(a)'s broad definition of property of the estate. Consequently, if the Debtors' AMS Plan meets the requirements of a "qualifying trust" pursuant to section 401 of the Internal Revenue Code, the plan is excluded from the definition of property of the estate under section 541(c)(2). ERISA qualification is not a condition precedent to the AMS Plan being exempt under New Jersey law. Therefore, the court concludes that it need not make a determination of ERISA qualification because the New Jersey statute explicitly offers protection to plans qualified under the Internal Revenue Code without reference to ERISA. *See e.g., In re Luttge,* 204 B.R. 259 (Bankr.S.D.Fla.1997)(court determined that a plan that did not qualify as a retirement plan under ERISA was still exempt under Florida statute because it complied with section 408 of the tax code).

## III. A Determination of Tax Qualification by the IRS is Entitled to Due Deference

▇ Written "determination letters" by the IRS may not be used or cited as precedent in other cases; however, they are entitled to some weight. *Kaplan v. First Op-* *tions of Chicago,* 189 B.R. 882, 890–91 (E.D.Pa.1995), *citing Amato v. Western Union International,* 773 F.2d 1402, 1412–13 (2d Cir.1985). Moreover, the force of determination letters is enhanced by the limited circumstances under which the IRS issues them. *Id.*

In *Kaplan,* the court concluded that bankruptcy courts should defer to the IRS on issues of tax qualification. Relying on the Fifth Circuit's reasoning in *Youngblood,* the court noted:

> "The IRS which has been entrusted with the task of implementing the Internal Revenue Code, has adopted extensive rules and regulations governing income tax in general, and the taxability of pension plans in particular." In *Youngblood,* the Fifth Circuit considered whether a bankruptcy court had erred in independently finding that a pension was not qualified under federal tax law ... despite the fact that the IRS had specifically found the plan to be qualified. In reversing the bankruptcy court and district court's holding, the Fifth Circuit commented: 'We are persuaded that the legislature intended for its own state courts (or bankruptcy courts applying Texas law) to defer to the IRS in determining whether a retirement plan is "qualified" under the Internal Revenue Code. We see no reason that the legislature would want its courts, which are inexperienced in federal tax matter, to second-guess the IRS in such a complex, specialized area. We find it much more reasonable to assume that the legislature contemplated creating an exemption from seizure for a debtor's retirement funds that could be simply and readily determined by referring to the federal tax treatment of those funds. Moreover, we do not believe that the legislature wanted to adopt a scheme that invites frequent, unseemly, conflicting decisions between the state court or bankruptcy court, and the IRS, such as occurred in this case.'

*Kaplan v. First Options of Chicago,* 189 B.R. 882, 891 (E.D.Pa.1995), *quoting In re Youngblood,* 29 F.3d 225, 229 (5th Cir.1994). This Court believes the rationale employed by the

Fifth Circuit in *Youngblood* is both sound and applicable in this case.

■ Moreover, principles of comity suggest that this Court defer to the expertise of the United States Tax Court on tax matters. Section 7476 of the Internal Revenue Code imbues the tax court with the power to make a declaration respecting the initial or continuing qualification of a retirement plan under section 401(a):

> The Tax Court has jurisdiction to review favorable determination letter where employee claims that employer's pension plan does not meet rules for qualification under 26 U.S.C. § 401(a); in making its determination, Tax Court does not re-examine information submitted to District Director by employer in support of its application nor does Commissioner make independent investigation of facts, one of Commissioner's basic functions is to determine whether new or revised plan meets minimum requirements of law, and for purposes of making this determination, submitted information is accepted as correct.

*Stevens v. Commissioner*, 49 T.C.M. (CCH) 1261, 1985 WL 14818 (1985). In other words, section 7476 is not a broad grant of authority enabling the tax court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies. *Simmons v. Commissioner*, 70 T.C.M. (CCH) 558, 1995 WL 507593 (1995). If it is inappropriate for tax courts to look behind favorable determination letters, it certainly would not be the province of the bankruptcy court to do so.

■ In addition, summary disqualification of the entire plan would result in violation of the Debtors' rights to procedural due process. This court does not pretend full familiarity with the byzantine workings of the Internal Revenue Code and Treasury Regulations. Even a quick perusal of the Internal Revenue Code and Treasury Regulations, however, indicates that the procedural protections afforded to plans after the issuance of a favorable determination by the IRS are elaborate. The Internal Revenue Code mandates exhaustion of all administrative remedies within the Service before any adjudica-

tion by the tax court. It also provides the opportunity to amend the plan to include required provisions, or to delete disqualifying provisions, rendering the plan qualified with retroactive effect. *See*, 26 U.S.C. § 401(b); *Treas. Reg.* § 1.401(b)–1(a), 26 C.F.R. § 1.401(b)–1(a) (1994). By way of further example, the Voluntary Compliance Resolution Program enables plan participants to cure operational defects without the penalty of disqualification. Even the Sureties' own expert acknowledged ample opportunities under the regulations for plans to cure prior to being deemed disqualified. Thus, the IRS itself offers many layers of opportunity to cure any operational defects before imposing the extreme sanction of disqualification. It is doubtful whether this court could or should declare a plan disqualified without offering the plan a similar opportunity to cure.

## IV. The Facts Presented do not Overcome the Weight of the IRS' Favorable Determination Letters

■ In the instant case, the IRS approved the AMS Plan and issued favorable letters of determination, not just once, but three times, and as recently as late 1996. This fact cannot be discounted. The AMS Plan, like the plan in *Kaplan*, has never been disqualified by the IRS. The administrator of the AMS Plan testified that all necessary tax returns as well as all the necessary actuarial reviews were filed in due course. The distribution alleged as the disqualifying act was taken in 1994. Nothing in the record indicates that the Debtors failed to disclose the distribution, and in fact the testimony of Debtors' Pension Administrator is that the § 80,000 distribution was disclosed in a 5500 Form. Since the IRS issued its most recent favorable determination letter in 1996, and the IRS had all the relevant information regarding the distribution at that time, the Court does not believe that a different determination of qualification is appropriate. This Court will defer to the IRS's determination, and find that the AMS Plan remained a "qualified trust" under the Internal Revenue Code. *See, First Options of Chicago, Inc. v. Kaplan*, 198 B.R. 91 (E.D.Pa.1996) (court denied motion for reconsideration affirming

**66**

its initial decision that courts would defer to the expertise of the IRS when determining the qualification of a plan; again the court stressed that since all the required tax returns and actuarial reviews were filed, the IRS had all the information to review the plan if it so chose).

### Conclusion

■ This court holds that the unbelayed issuance of a favorable determination letter by the IRS is sufficient evidence that a plan is a "qualified trust" under the Internal Revenue Code for the purposes of *N.J.S.A.* 25:2–1(b). Parenthetically, the Court notes that another state has reached the same result by expressly including plans that have received favorable determination letters within the definition of a "qualified trust." Alabama Code § 19–3–1(b)(5)(d) states:

> A "qualified trust" includes, without limitations, any trust that has received a favorable determination letter from the Internal Revenue Service of the United States Department of Treasury to the effect that such trust is, or will be upon the satisfaction of certain administrative conditions, a "qualified trust" under Section 401(a) of the Code.

*In re Harless,* 187 B.R. 719, 724 (Bankr. N.D.Ala.1995). The Alabama legislature clearly intended to effectuate the same result as the New Jersey legislature. Although the statutory definition differs, the Alabama statute buttresses this court's conclusion that the issuance of a favorable determination letter is determinative for purposes of *N.J.S.A.* 25:2–1.

The court finds the reasoning in *Kaplan* and *Youngblood* extremely persuasive. Moreover, aside from *Kaplan* and *Youngblood,* to declare the Plan disqualified now would strip the Debtors of significant procedural protections. Accordingly, the court will enter an order declaring the AMS Plan to be excluded from the Debtors' estate pursuant to 11 U.S.C. § 541(c)(2) and *N.J.S.A.* 25:2–1(b). Counsel for the Debtors shall submit an appropriate form of order. The Sureties' Motion to Strike or Modify AMS Plan will be denied with the standard order.

ORDER DENYING MOTION OR APPLICATION FOR THE ENTRY OF AN ORDER TO FIX PENSION BENEFITS REASONABLY FOR THE SUPPORT OF THE DEBTOR & THEIR DEPENDENTS & OTHER RELIEF

A motion or application having been filed on July 25, 1996, by First Indemnity of America Insurance Company, for entry of an order as set forth above, all interested parties having been duly served, the Court having considered all of the papers submitted, along with any arguments of counsel, and for good cause shown,

It is on this June 30, 1997

ORDERED that the aforesaid motion or application is denied.

The successful party shall serve this order on the debtor, any trustee and all parties who entered an appearance on this matter.