FLIGHT ATTENDANTS AGAINST UAL OFFSET (FAAUO) and United Air Lines, Inc., Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 97–3151, 97–3335.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1998.

Decided Jan. 15, 1999.

Rehearing Denied March 10, 1999.

---

**574**

Michael S. Gordon (argued), Washington, DC, for Petitioner–Appellant in No. 97-3151.

Gary R. Allen, Gilbert S. Rothenberg, Ellen P. DelSole (argued), Sally J. Schornstheimer, Dept. of Justice, Tax Div., Washington, DC, for Respondent–Appellee in No. 97-3151.

Kim M. Boylan, Mayer, Brown & Platt, Washington, DC, Thomas C. Durham, Mayer, Brown & Platt, Chicago, IL, for Petitioner–Appellant in No. 97-3335.

Gary R. Allen, Dept. of Justice, Tax Div., Washington, DC, for Respondent–Appellee in No. 97-3335.

Before POSNER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, an association of flight attendants employed by United Air Lines, filed suit in the Tax Court under 26 U.S.C. § 7476 seeking a declaration that the Internal Revenue Service had erred in determining that the conversion of United's retirement savings plan for flight attendants to a 401(k) plan had no tax consequences. The association wanted the plan terminated rather than converted and the plan's assets distributed to the flight attendants, and it believed that this would happen if the new plan was denied the favorable tax status that the original plan had enjoyed.

The suit had to be filed "before the ninety-first day after the day after such notice is mailed." 26 U.S.C. § 7476(b)(5); Rule of Practice and Procedure of U.S. Tax Court 25(a). The notice was mailed to the association on August 23, 1996; the day after was August 24; the ninety-first day after August 24 was Saturday, November 23; the last day for filing the suit was therefore Friday, November 22, 1996. The association did not file until the following Monday, November 25.

The Tax Court dismissed the suit as untimely. It also dismissed, as moot, United's motion to dismiss the suit on the ground that United was a necessary party and the association had failed to join it. Both the association and United appeal. The association invokes the doctrine of equitable tolling to justify its untimely filing. The government asserts that the doctrine has no application to tax cases, and alternatively that the association has failed to make a case for equitable tolling.

We must consider first whether the association has standing to litigate over the IRS's grant of favorable tax status to United. Ordinarily a person does not have standing to complain about someone else's receipt of a tax benefit. *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The injury is too attenuated for the dispute to reach the level of a real "case" or "controversy" in the sense that the Supreme Court has impressed on these terms found in Article III, section 2 of the Constitution. This case is different, however—is a real "case"—because the members of the association are participants in the retirement savings plan that was the subject of the IRS's ruling. They could certainly have challenged a denial of favorable tax treatment for the plan; it would have been an injury to them; the Internal Revenue Code and its implementing regulations make clear their right to seek declaratory relief. 26 U.S.C. § 7476(b)(1); 26 C.F.R. § 1.7476–1(b)(1); *Self–Insurance Institute v. Korioth*, 993 F.2d 479, 484 (5th Cir.1993). It might seem that they would have no interest in challenging the *grant* of such treatment. But they do, because denial, while unfavorable to them in one sense, would have been favorable in another. It would have precipitated termination of the plan, because it would have required the participants to pay taxes on United's contributions to the plan and forbidden United to deduct those contributions from its taxable income, see 26 U.S.C. §§ 401, 402(b), 404(a)(5), 501, and these tax consequences would have been fatal to the plan's viability. See generally John D. Colombo, "Paying for Sins of the Master: An Analysis of the Tax Effects of Pension Plan Disqualification and

a Proposal for Reform," 34 *Arizona Law Review* 53 (1992). The plan provided that upon termination its assets would be distributed to the participants. Thus a successful challenge to the IRS's ruling would have initiated a sequence of actions the result of which would have been to put money in the pockets of the association's members. The total value of their benefits would have been less because of the loss of favorable tax treatment, but they prefer a bird in the hand to two birds in the bush; for them, continued favorable tax treatment is a harm.

■ Since the members of the association had Article III standing, so did the association. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1243 (7th Cir.1991); *Self–Insurance Institute v. Korioth*, 993 F.2d 479, 484. But the statute under which the association sued authorizes only employees to sue, which may be why throughout the administrative proceedings in this case the IRS communicated directly with the association's president (who is an employee of United) rather than with the association as such. By the time the case had reached the Tax Court, everyone had forgotten that there might be an issue of the association's right to sue, although it is mentioned in a footnote in the government's brief in this court. The footnote points out that the government may not be sued without statutory authorization, *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Gibson v. Brown*, 137 F.3d 992, 997–98 (7th Cir.1998), here lacking. But it makes no practical difference whether the association is the proper party plaintiff, or its president. She is a participant in the plan and so has standing to seek declaratory relief against the IRS's ruling on the plan's tax status. We can thus treat this as a suit by her rather than by the association without consequence. So let us move on to the issue of the timeliness of the suit.

■ The doctrine of equitable tolling permits a prospective plaintiff to delay filing suit beyond the statute of limitations if despite due diligence on his part he cannot obtain the information he needs in order to determine, in time to sue within the deadline, whether he has a claim on which a suit can be founded. A closely related doctrine, equitable estoppel, allows delay in suing when the defendant, in this case the IRS, has taken steps to prevent the plaintiff from suing in time. (On both doctrines, see, e.g., *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 852 (7th Cir.1996); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–53 (7th Cir.1990); *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C.Cir.1998).) This case has a whiff of equitable estoppel because, as we are about to see, the basis of the claim of equitable tolling is the IRS's failure to give the association information that the association claims it needed in order to sue. Yet the association does not mention that doctrine, and so any reliance on it is waived; in any event, as will soon become apparent, the facts no more show equitable estoppel than they show equitable tolling.

■ United asked for a ruling from the IRS on the tax status of its new plan late in 1995. On August 14 of the following year, the association asked the IRS for copies of all comments or other correspondence that had been submitted to the IRS in connection with United's request. Nine days later the IRS mailed to the association's president a notice of a final determination (dated the previous day) that the new plan did qualify for continued favorable tax treatment. It was this mailing that set the period for the association to challenge the determination running, and the period expired as we said on November 22. The IRS had not replied to the association's request for comments. On the contrary, on November 15 the IRS had notified the association's president that it had forwarded her request to the appropriate office for consideration. She should have known that it was unlikely, to say the least, that a response would be forthcoming in time for the association to prepare a pleading due a week later. And in fact the IRS did not reply until February of the following year, when it told the association that it had re-

ceived no comments apart from those submitted by the association itself. Despite not having received any comments, the association filed its suit three days (only one business day) after the November 22 deadline expired.

When asked at oral argument how, if the comments (or at least a denial that there were any comments) were essential to its being able to file suit, the association was able to file suit before it received either the comments or the denial, the association's lawyer said that the petition for declaratory relief that he filed on November 25, 1996, was "unreal," that it was really a request for additional time for filing the "real" petition. But if it was "unreal," then the Tax Court was right to dismiss it irrespective of any deadline considerations, and the association should have filed the "real" petition after it learned in February of 1997 that there were no comments. Because the association has never filed what it considers a "real" petition, we cannot gauge what difference it would make to a challenger's ability to file a petition to have in hand either the comments or a denial that there were comments. Probably very little. The "unreal" petition asked the Tax Court to overrule the IRS's determination and rescind the plan's favorable tax treatment. No more was required in an initial pleading, which under the rules of the Tax Court need only be a "clear and concise statement of each ground . . . and the facts to support each ground." Rule of Practice and Procedure of the U.S. Tax Court 211(c)(4)(D).

A regulation requires the applicant (here United) for IRS approval of favorable tax treatment of a retirement plan to make any comments received on the application "immediately" available to all parties. 26 C.F.R. § 601.201(o)(3)(xvii); see also Stevens v. Commissioner, 49 T.C.M. (CCH) 1261, 1267 , 1985 WL 14818(1985). The association did not take advantage of this regulation; instead it asked the IRS for the comments. It offers no excuse for this blunder.

■ Statutes of limitations are not merely traps for the unwary; they serve important social purposes. Board of Regents v. Tomanio, 446 U.S. 478, 487, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1165–66 (7th Cir.1996); Resolution Trust Corp. v. Seale, 13 F.3d 850, 852 (5th Cir.1994); Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385, 1393–94 (7th Cir.1990) (concurring opinion). This is conspicuously the case with respect to determinations of the tax status of retirement plans. Because the alteration of that status as a consequence of litigation can require a revision of tax liabilities for past years, disturbing expectations and entailing heavy administrative expenses, it is vital that such litigation be instituted as soon as possible after the initial determination of the plan's status; that may be why the statute of limitations is so short. It is equally vital that a party who wants to appeal to the doctrine of equitable tolling to excuse a late filing show (as the doctrine requires him to do, e.g., Wolin v. Smith Barney Inc., supra, 83 F.3d at 852; Cada v. Baxter Healthcare Corp., supra, 920 F.2d at 451; Currier v. Radio Free Europe/Radio Liberty, Inc., supra, 159 F.3d at 1367) that he tried diligently to file within the deadline or as soon afterwards as possible. The flight attendants' association did not exhibit diligence. If it could file suit on November 25 it could have filed three days earlier; nothing had changed in the interim. If, as we do not for a moment believe, it could not file a "real" suit until February 1997, when it learned that there were no comments, it should have filed a real petition then. Had that petition been turned down as untimely, at least we would have a concrete record on which to base a judgment about a challenger's actual need for such comments. And rather than sit on its hands waiting for an agency not known for its celerity to respond to a request that should have been directed to the applicant for the tax ruling, the association should have complied with the regulation and directed its request to United.

■ Since, so far as appears, the association could have sued in time notwithstanding the IRS's foot dragging, the latter's conduct or rather nonconduct did not work an estoppel because it did not make it impossi-

ble for the association to sue in time. It is implicit in the doctrine that the conduct alleged as the basis for the estoppel have been the cause of the plaintiff's not suing in time. See *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663 (7th Cir.1997); *Cange v. Stotler & Co.,* 826 F.2d 581, 587–88 (7th Cir.1987); *Redman v. U.S. West Business Resources, Inc.,* 153 F.3d 691, 695 (8th Cir.1998). It is therefore immaterial whether, as we believe, diligence is not an element of equitable estoppel, *Wolin v. Smith Barney Inc., supra,* 83 F.3d at 852, or, as other courts believe, *Benitez–Pons v. Puerto Rico,* 136 F.3d 54, 63 (1st Cir.1998); *Robinson v. Dalton,* 107 F.3d 1018, 1023 (3d Cir.1997), it is. (In *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), the Supreme Court noted the conflict but left it unresolved.) For however that issue is resolved, the IRS's foot-dragging and failure to remind the association that it could ask for the comments directly from United are not the kind of obstructive conduct that would warrant estopping a defendant to plead the statute of limitations. Not being prompt and helpful is a lot different from actually preventing a plaintiff from suing in time. See, e.g., *Speer v. Rand McNally & Co., supra,* 123 F.3d at 663; *Redman v. U.S. West Business Resources, Inc., supra,* 153 F.3d at 695.

Because the association has failed to make a case for equitable tolling, we need not decide (as the parties invite us to do) whether the doctrine may ever be invoked in a federal tax case. In *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court held that the doctrine does apply to suits against the federal government, but in *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), it carved an exception for tax refund suits. See also *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–63 (Fed.Cir.1998). The government asks us, on the authority of *Brockamp,* to broaden the exception to cover the entire tax code. But *Brockamp* is not broadly written. The Court pointed to emphatic statutory language not paralleled in the sections of the code at issue in this case indicating Congress's disinclination to permit any delays in the institution of tax refund litiga-

tion and to the administrative complexities that would ensue from injecting the complex, nuanced, case-by-case doctrine of equitable tolling into the assembly-line production of tax refunds in response to the enormous number of refund claims (more than a hundred million) filed every year.

Taking a tack independent of *Brockamp,* the government argues that because the Tax Court, being a court of limited jurisdiction (*Brockamp* was a refund case and thus originated in a district court rather than the Tax Court), lacks the power to recognize equitable defenses not specified by Congress. This is also the position of the Tax Court. Rule of Practice and Procedure of U.S. Tax Court 210(c)(3); *Calvert Anesthesia Associates v. Commissioner,* 110 T.C. 285, 1998 WL 201751 (1998); *Estate of Rosenberg v. Commissioner,* 73 T.C. 1014, 1017–18, 1980 WL 4581 (1980). Rule 210(c)(3) states that the Tax Court does not have "jurisdiction" over a suit for declaratory judgment under 26 U.S.C. § 7476 if it is filed after the statutory deadline.

 Had Congress delegated to the Tax Court the power to establish nonwaivable jurisdictional rules, akin to those that limit the time for taking appeals, e.g., Fed. R.App. P. 26(b); *Torres v. INS,* 144 F.3d 472, 475 (7th Cir.1998); *Nowak v. INS,* 94 F.3d 390, 391 (7th Cir.1996), we would be bound. But neither the government, nor the Tax Court in the *Calvert* or *Rosenberg* decisions, has claimed this; nor have we found any indication that this was Congress's intention in authorizing the Tax Court to adopt procedural rules. 26 U.S.C. § 7453. If, therefore, Rule 210(c)(3) is merely the Tax Court's interpretation of the Internal Revenue Code, and of the principles of federal common law that guide the resolution of procedural issues to which the Code does not speak, we are not bound. The Tax Court is a trial court rather than an appellate court, and its views on questions of law are not entitled to deference from the courts of appeals. *Prussner v. United States,* 896 F.2d 218, 224 (7th Cir. 1990) (en banc); *Cadwallader v. Commissioner,* 919 F.2d 1273, 1274 (7th Cir.1990).

The argument that the Tax Court cannot apply the doctrines of equitable tolling and equitable estoppel because it is a court of limited jurisdiction is fatuous. *All* federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 95, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). We are given no reason to suppose that statutes of limitations are intended to be administered differently in the Tax Court than in the federal district courts, which share jurisdiction in federal tax cases with the Tax Court. It is true that the predecessor bodies to the Tax Court, such as the Board of Tax Appeals, were administrative agencies having more limited powers than a regular court. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 725, 49 S.Ct. 499, 73 L.Ed. 918 (1929); *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943). But the present Tax Court operates pretty indistinguishably from a federal district court. *Freytag v. Commissioner*, 501 U.S. 868, 891, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). It differs in some respects—it has a specialized jurisdiction, obviously, and its judges are not Article III judges. But none of the differences bear on whether the court is empowered to recognize defenses to the statute of limitations. In context, the Supreme Court's dictum in *Commissioner v. McCoy*, 484 U.S. 3, 7, 108 S.Ct. 217, 98 L.Ed.2d 2 (1987) (per curiam), that the Tax Court lacks "general equitable powers" means only that the Tax Court is not empowered to override statutory limits on its power by forgiving interest and penalties that Congress has imposed for nonpayment of taxes—but then no court is, unless the imposition would be unconstitutional.

Without citing *McCoy* or *United States v. Dalm*, 494 U.S. 596, 611 and n. 8, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), which reserves the issue of the Tax Court's equitable powers, the Supreme Court in *Freytag v. Commissioner, supra*, 501 U.S. at 891, 111 S.Ct. 2631, pointed out that the Tax Court has been given injunctive and other equitable powers; and numerous cases affirm the Tax Court's power to enforce equitable principles, such as contract reformation and judicial estoppel, without express congressional authorization. E.g., *Kelley v. Commissioner*, 45 F.3d 348, 351–52 (9th Cir.1995); *Buchine v. Commissioner*, 20 F.3d 173, 177–78 (5th Cir. 1994); *Bokum v. Commissioner*, 992 F.2d 1136, 1140–41 (11th Cir.1993); *Mueller v. Commissioner*, 101 T.C. 551, 1993 WL 516196 (1993); *Woods v. Commissioner*, 92 T.C. 776, 784–87, 1989 WL 32907 (1989). We are at a loss to understand why equitable tolling and equitable estoppel shouldn't be among the equitable principles applicable to proceedings in the Tax Court. *Bokum v. Commissioner, supra*, holds that they are among them. The overlap between the district courts' jurisdiction over refund suits and the Tax Court's jurisdiction over deficiency suits—both jurisdictions exclusive, but the taxpayer allowed to choose between them—makes it anomalous and confusing to multiply distinctions between the doctrines applied by the two types of court. Cf. *Shepherd v. Commissioner*, 147 F.3d 633 (7th Cir.1998).

At argument the government's lawyer emphasized quite properly not dry legalisms about jurisdiction but instead the importance of prompt resolution of issues involving the tax status of retirement plans, and this may justify the extension of the holding of *Brockamp* to the present case after all. But that we need not decide.

Our disposition of the association's appeal moots United's appeal. United had moved to dismiss the suit because the association had failed to join a necessary party, namely United. Rule of Practice and Procedure of U.S. Tax Court 215(a)(3). The Tax Court denied the motion as moot when it ruled that it had no jurisdiction over the suit because it had been filed late. Although United has appealed from that denial, the appeal is conditional on our reversing the Tax Court's dismissal of the suit, which we have not done.

So: No. 97–3151 is affirmed and No. 97–3335 is dismissed as moot.