178 F.3d 501
 161 L.R.R.M. (BNA) 2321
 Bryan CHAPPLE, Robert Hughes, Danny Wimbleduff, and Paul
Miller, Plaintiffs-Appellants,
v.
NATIONAL STARCH & CHEMICAL COMPANY AND OIL, Chemical and
Atomic Workers International Union, AFL-CIO and
its Affiliated Local No. 7-706,
Defendants-Appellees.
 Nos. 98-2876, 98-2879.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 16, 1999.
Decided May 24, 1999.
 
 J. Clifford Greene, Jr. (argued), Chicago, IL, for plaintiffs-appellants.
 Hudnall A. Pfeiffer (argued), Baker & Daniels, William R. Groth (argued), Fillenwarth, Dennerline, Groth & Towe, Indianapolis, IN, for defendant-appellee.
 Before POSNER, Chief Judge, and FLAUM and ROVNER Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 This is an appeal from summary judgment against workers claiming that they had been wrongfully discharged by their employer and inadequately represented by their union. The district court determined that all claims against the defendants were either time barred or preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. sec.185(a). We now affirm the district court's decision.
 
 Background
 
 2
 The plaintiffs, Bryan Chapple, Robert Hughes, Danny Wimbleduff and Paul Miller, were employed by National Starch and Chemical Company ("National Starch") in its Indianapolis plant. In the spring of 1995, National Starch instituted an undercover investigation in response to allegations of illegal drug use by its employees. The investigation identified twenty-one employees, including the plaintiffs, as either users or dealers of illegal substances. On November 15, 1995 the company discharged the plaintiffs and ten others.
 
 
 3
 Claiming that the firings were improper, the plaintiffs submitted their grievances to binding arbitration pursuant to the collective bargaining agreement then in effect between National Starch and plaintiffs' union, Local 706 of the Oil Chemical and Atomic Workers International ("Local 706"). In addition to the arbitration procedure, the bargaining agreement contained a management rights clause reserving to National Starch the right to discharge employees for cause and to manage the plant in accordance with the terms of the agreement and in a manner consistent with state and federal law.
 
 
 4
 Local 706 appointed attorney Robert Rifkin to represent the discharged employees in the arbitration procedure. On February 15, 1996, Rifkin wrote to National Starch's attorney, Hudnall A. Pfeiffer, asserting that the company had missed a reply deadline set out in the arbitration procedures. Rifkin indicated that the union considered this a default entitling the discharged workers to immediate reinstatement with full back pay and benefits. The following day, Pfeiffer faxed a letter to Rifkin explaining that the union's Unit Chairman Willie Williams and Chief Steward Bob Westerfield had granted National Starch an oral extension of time to respond, something the Local 706 had routinely done in the past. The plaintiffs maintain, however, that no extension was ever granted and that the union should have insisted on reinstatement. The events surrounding Rifkin's letter form the basis of the plaintiffs' federal claims against the union and National Starch.
 
 
 5
 During the grievance procedure, the union decided that the claims of Hughes and Wimbleduff were without merit and, on August 6, 1996, notified each that their grievances would not be pursued any further. The union then submitted the grievances of Miller and Chapple to arbitration. On January 31, 1997, the arbitrator ruled that National Starch had properly terminated Miller for violating the company's rule against drug abuse, and Chapple for refusing to submit to a drug test.
 
 
 6
 In September, 1997, the four plaintiffs filed related suits against Local 706 for failure to represent their interests and against National Starch for breach of the collective bargaining agreement, wrongful termination and intentional infliction of emotional distress.[1] After a series of motions, including the defendants' motion to dismiss, the parties agreed to stay discovery on May 22, 1998.
 
 
 7
 On June 25, 1998, Judge Hamilton granted summary judgment[2] in favor of both defendants, holding that the failure to represent and the breach of collective bargaining agreement claims were time barred by the six-month statute of limitations applicable to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. sec.185(a). The court rejected the plaintiffs' argument that the limitations period applicable to their federal claims should have been either tolled based on the plaintiffs' inability to discover the existence of their claim until more than six months after it accrued or disregarded due to the defendants' failure to disclose important information. The judge also dismissed the plaintiffs' state law claims as preempted by Section 301 because they depended on an interpretation of a collective bargaining agreement between the union and National Starch.
 
 Discussion
 Time Barred Claims
 
 8
 Summary judgment is only appropriate if, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); Salima v. Scherwood South, Inc., 38 F.3d 929, 932 (7th Cir.1994). This court reviews the award of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. See Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 883 (7th Cir.1998). However, we are "not required to draw every conceivable inference from the record [in favor of the non-movant]--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Additionally, the non-moving party must be able to point to record evidence that would reasonably permit the fact finder to find in its favor on a material question. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir.1994). Therefore the non-moving party may not "rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; [it] must go beyond the pleadings and support [its] contentions with proper documentary evidence." Chemsource Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir.1997).[3]
 
 Statute of Limitations
 
 9
 The district court correctly held that the plaintiffs' failure to represent and breach of collective bargaining claims had not been filed within the limitations period. Both were brought pursuant to Section 301 of the LMRA, and are therefore subject to its six month statute of limitations. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (statute of limitations applicable to hybrid 301 claims is the six month period borrowed from Section 10(b) of National Labor Relations Act, 29 U.S.C. sec.10(b)); Jones v. General Electric Co., 87 F.3d 209, 211-12 (7th Cir.1996). Contrary to the plaintiffs' suggestion, a Section 301 "cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." Richards v. Local 134, Int'l Bhd. of Elec. Workers, 790 F.2d 633, 636 (7th Cir.1986) (citing DelCostello, 462 U.S. at 155, 172, 103 S.Ct. 2281); Beck v. Caterpillar, 50 F.3d 405, 408 (7th Cir.1995). Accordingly, the claims of Hughes and Wimbleduff accrued no later than August 6, 1996, the date they were notified that the union was not going to pursue their grievances, see Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299, 304 (7th Cir.1983) (union's refusal to file grievance constitutes a final decision triggering limitations clock.); Sosbe v. Delco Electronics, 830 F.2d 83, 87 (7th Cir.1987) (same). Miller and Chapple's claims accrued no later than January 31, 1997, the date the arbitrator issued its decision against them.[4] DelCostello, 462 U.S. at 155, 103 S.Ct. 2281 (cause of action accrues when grievance committee's decision rendered); Ernst v. Indiana Bell Telephone Co., Inc., 717 F.2d 1036, 1038 (7th Cir.1983) (claim accrued at end of arbitration); Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers, 746 F.2d 1316, 1319 (7th Cir.1984) (same). Because the plaintiffs filed suit on September 19, 1997, more than six months after the accrual of any of their claims, all claims exceed the applicable statute of limitations. Thus absent some exception to the time bar, the court correctly awarded judgment in favor of the defendants on the Section 301 claims.
 
 Equitable Tolling
 
 10
 The plaintiffs first argue that their late filing should be excused because they were unable to discover essential evidence necessary to establishing their claim until the limitations period had expired. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir.1990). This argument attempts to invoke the doctrine of equitable tolling, which "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Id. at 451. However, if a reasonable person in the plaintiff's position would have been aware within the limitations period of the possibility that its rights have been violated, then equity does not toll the limitations period. Id.; Hentosh v. Herman M. Finch University of Health Sciences, 167 F.3d 1170, 1175 (7th Cir.1999). Although a plaintiff need not allege any wrongdoing on the part of the defendant, tolling requires a showing that the plaintiff exercised continuous diligence and brought the suit as soon as it was practicable. Hentosh, 167 F.3d at 1175; Wolin v. Smith Barney, 83 F.3d 847, 852 (7th Cir.1996).
 
 
 11
 The plaintiffs argue that because they did not actually obtain a copy of the Rifkin letter until August 1997, after the statute of limitations expired, their claims should be tolled. We are not persuaded by this argument for two reasons. First, the plaintiffs fail to explain why the letter was essential to bringing the claim. They admitted both in district court and at oral argument before this court that they were aware of Rifkin's letter by at least March or April of 1997, months before the limitations period for Chapple and Miller had expired. This should have been enough to put the plaintiffs on notice that they may have been wronged in the manner they now allege. As this court has emphasized, the tolling inquiry asks only whether the plaintiff was unable to learn of the possibility of its claim within the limitations period; it does not ask whether the plaintiff was unable to obtain solid proof. Hentosh 167 F.3d at 1175. Once the plaintiffs knew of the letter, they had ample time to file the failure to represent claims based on it. We have previously explained that equitable tolling "gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations." Cada, 920 F.2d at 452.
 
 
 12
 Second, even if the information contained in the letter was not known to the plaintiffs prior to August 1997 (and assuming it was necessary to bring suit), the plaintiffs have still failed to demonstrate diligence in attempting to obtain the information during the limitations period. As the district court correctly concluded, aside from their assertions, the plaintiffs point to no record evidence on which a jury could reasonably base a finding that they pursued vital information concerning the claim but were unable to file it in a timely manner. See McCool v. Strata Oil Co., 972 F.2d 1452, 1463 (7th Cir.1992). The plaintiffs do not explain, for instance, how they got the Rifkin letter or why it (or the information it contained) could not have been obtained sooner. Without this showing of diligence, the plaintiffs cannot invoke equitable tolling. Flight Attendants v. Commissioner of Internal Revenue, 165 F.3d 572, 576 (7th Cir.1999). This court has indicated that equitable tolling should be exercised "only sparingly," and not in cases "where the claimant failed to exercise due diligence in preserving his legal rights." Tyler v. Runyon, 70 F.3d 458, 465 n. 8 (7th Cir.1995) (quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).
 
 Equitable Estoppel
 
 13
 The plaintiffs' second argument relies on the doctrine of equitable estoppel, sometimes referred to as fraudulent concealment. Under this doctrine, a defendant who conceals vital information about the existence of a plaintiff's claim or makes representations to the plaintiff causing it to delay bringing the claim, can be estopped from relying on the statute of limitations as a defense. Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 (7th Cir.1995); see Chakonas v. City of Chicago, 42 F.3d 1132, 1136 (7th Cir.1994). The defendant's misconduct must be distinct from that which forms the basis of the plaintiff's claim: "[Fraudulent concealment] denotes efforts by the defendant--above and beyond the wrongdoing upon which the plaintiff's claim is founded--to prevent the plaintiff from suing." Cada, 920 F.2d at 451. In addition, the plaintiff's failure to file the claim on time must have been done in reliance on the defendant's fraudulent conduct. Hentosh, 167 F.3d 1170, 1173 (7th Cir.1999) (quoting Wheeldon v. Monon Corp., 946 F.2d 533, 537 (7th Cir.1991)); see also Flight Attendants Against UAL Offset v. Commissioner of Internal Revenue, 165 F.3d 572, 577 (7th Cir.1999) ("It is implicit in the doctrine that the conduct alleged as the basis for the estoppel have been the cause of the plaintiff's not suing in time.").
 
 
 14
 As with equitable tolling, the plaintiffs have failed to demonstrate a genuine issue of material fact concerning the applicability of equitable estoppel. First, the plaintiffs have not shown that the defendants took any affirmative steps to conceal their causes of action beyond those which form the basis of the failure to represent and breach of collective bargaining claims. Cada, 920 F.2d at 451. They do assert that National Starch and Local 706 actively conspired to hide the missed deadline, but such unsupported allegations are not enough at the summary judgment stage: "The allegation of a conspiracy alone is not an adequate basis from which fraudulent concealment may be inferred." Baker v. F & F Inv., 420 F.2d 1191, 1198 (7th Cir.1970). The rest of the plaintiffs' evidence amounts to a showing that neither defendant actually told any of the plaintiffs about the Rifkin letter. Essentially, they argue that either the union or the employer had an affirmative duty to keep them abreast of the arbitration, and failing to mention the Rifkin letter which explained the missed deadline amounted to fraudulent concealment. See Suslick v. Rothschild Securities, 741 F.2d 1000, 1002 (7th Cir.1984); but see Flight Attendants Against UAL Offset, 165 F.3d at 577 ("Not being prompt and helpful is a lot different from actually preventing a plaintiff from suing on time.") (citations omitted). However, we need not decide whether such an affirmative duty exists or whether its breach would amount to conduct sufficiently separate from the underlying claim to justify estoppel, because the plaintiffs have not shown that the defendants' silence caused them to file their claims late. As already noted, the plaintiffs claim to have known about the Rifkin letter months before the limitations period expired. Without more,[5] the defendants' failure to tell the plaintiffs something they already knew does not satisfy the causal requirement implied in the estoppel doctrine. See Flight Attendants Against UAL Offset, 165 F.3d at 577; Hentosh, 167 F.3d at 1173.
 
 
 15
 Because the plaintiffs' suit was filed after the limitations period applicable to Section 301 had expired, and because neither the tolling nor estoppel theories prevent its operation in this case, we hold that the court correctly granted summary judgment in favor of the defendants on both federal claims.
 
 Preemption of State Law Claims
 
 16
 The plaintiffs filed state law claims against National Starch for wrongful discharge and intentional infliction of emotional distress. These claims are based on the same facts which underlie their claim for breach of the collective bargaining agreement against the company. The plaintiffs allege that they were fired without cause and that the drug testing policy they were subjected to violated their privacy rights. The district court dismissed the plaintiffs' state law claims holding that both were preempted by Section 301 because the resolution of each would depend upon the court's interpretation of the collective bargaining agreement. See Avco v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (Section 301 displaces state law claims which "require[ ] the interpretation of a collective bargaining agreement"). The plaintiffs now argue that the accusations against them were so flimsy, and the investigation so shoddy, that common sense and basic fairness will determine the outcome of the state law claims, not the terms of the collective bargaining agreement. See Livadas v. Bradshaw, 512 U.S. 107, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (where the meaning of contract terms is not a subject of dispute, state law claims are not extinguished).
 
 
 17
 We do not agree with the plaintiffs' suggestion. Whether the plaintiffs were wrongfully discharged or not depends on whether the company acted properly in setting up the drug investigation and had sufficient cause to fire the plaintiffs. The answers to these questions would require a court to decide if the employer was acting within the scope of the management rights clause of the collective bargaining agreement. See Amoco Petroleum Additives Co. 964 F.2d 706, 710 (7th Cir.1992) (noting cases holding that "federal rather than state law governs employees' privacy-based objections to drug tests") (citations omitted). This is true even when the collective bargaining agreement does not specifically mention drug testing. See id. That Local 706 and National Starch intended wrongful discharge claims based on the new drug policy to be covered by the collective bargaining agreement is evident from the fact that all of their claims were subjected to its mandated arbitration process. See Mitchell v. Pepsi-Cola Bottlers, Inc., 772 F.2d 342, 345-46 (7th Cir.1985); see also Johnson-Bateman Co., 295 NLRB 180 (1989) (drug testing mandatory subject of collective bargaining). Similarly, the plaintiffs' claims for intentional infliction of emotional distress are preempted. For a court to determine whether National Starch's conduct was "extreme and outrageous", an essential element of an emotional distress claim in Indiana, see Cullison v. Medley, 570 N.E.2d 27, 31 (Ind.1991), it would need to compare the company's conduct with that allowed by the management rights clause. This circuit has repeatedly held that such claims are preempted by Section 301. See Filippo v. Northern Indiana Public Service Corp., 141 F.3d 744, 750 (7th Cir.1998) ("[t]o determine whether [the company's] or the union's behavior was 'extreme or outrageous' would necessarily require an interpretation of the CBA."); Douglas v. American Information Technologies Corp., 877 F.2d 565, 570-73 (7th Cir.1989); Amoco Petroleum, 964 F.2d at 707. Because both claims could not be resolved without determining the meaning of the agreement, they fall within Section 301's preemptive ambit and were correctly dismissed.
 
 Conclusion
 
 18
 We agree with the district court that the plaintiffs' federal claims are time barred and their state law claims are preempted by Section 301. We therefore AFFIRM that court's decision.
 
 
 
 [1]
 The wrongful discharge and intentional infliction of emotional distress claims were originally filed in Indiana state court. National Starch then had them removed to federal court. The district court held that federal jurisdiction was supported by diversity, and therefore found it unnecessary to decide whether the court also had federal question jurisdiction under Section 301 and the doctrine of complete preemption. See Smith v. Colgate-Palmolive Co., 943 F.2d 764, 769-70 (7th Cir.1991)
 
 
 [2]
 The court treated the defendants' motion as one for summary judgment because it was supported by affidavits, and the plaintiffs were permitted to respond with affidavits of their own. See FED.R.CIV.P. 12(c) & (d); Hentosh v. Herman M. Finch University of Health Sciences, 167 F.3d 1170, 1173 n. 2
 
 
 [3]
 In their brief, the plaintiffs argue at length that summary judgment was improper here because a genuine issue of material fact exists as to whether the union had actually granted National Starch an extension prior to Rifkin's letter during arbitration and whether the claims of Hughes and Wimbleduff were indeed meritless and therefore unworthy of pursuit. However, the district court never reached these issues because it found the claims to be time barred. Therefore, because neither argument goes to the issue of whether the plaintiffs should be excused from complying with the statute of limitations, they are irrelevant. See Martin v. Youngstown, 911 F.2d 1239 (7th Cir.1990). Additionally, the plaintiffs claim that the court erred in not allowing them to depose union attorney Rifkin pursuant to Rule 56(e) despite the stay of discovery. According to their brief, the plaintiffs sought to question the attorney regarding the letter he sent to National Starch in February 1996. They do not even allege that Rifkin had information relevant to the statute of limitations issues. Under these circumstances, because the plaintiffs' proposed inquiry goes only to the merits, we fail to see how it is relevant to the district court's disposition
 
 
 [4]
 The accrual date is not the day on which they were actually injured (their discharge date, earlier than the accrual date) nor the day they obtained what they consider to be their smoking gun evidence--a copy of the letter written by Rifkin (later than the accrual date). Instead it is the date on which the plaintiffs should reasonably have been aware that they had been wronged, because the termination became final. See DelCostello, 462 U.S. at 155, 103 S.Ct. 2281
 
 
 [5]
 The plaintiffs do not allege, for instance, that they sought a copy of the Rifkin letter and were refused, or ever asked about the deadline issue once they knew about it. Instead, they merely allege that they may have inquired from time to time about the status of their claims and were never told about the deadline issue