**TEXAS MEDICAL ASSOCIATION INSURANCE TRUST,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. CIV. A–04–CA–190–LY.

United States District Court,
W.D. Texas,
Austin Division.

Sept. 30, 2005.

Michael Lynn Cook, Jenkins & Gilchrist, Austin, TX, for Texas Medical Association Insurance Trust, plaintiff.

Louise P. Hytken, Department of Justice, Tax Division, Cynthia E. Messersmith, Department of Justice, Dallas, TX, for United States of America, defendant.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

YEAKEL, District Judge.

Before the Court in the above-styled cause of action are Plaintiff Texas Medical Association Insurance Trust's ("TMAIT") Motion For Summary Judgment (Clerk's Document No. 9), Defendant United States of America's response (Clerk's Document No. 13), and TMAIT's reply (Clerk's Document No. 18). Additionally, before the Court is Defendant United States' Motion For Summary Judgment (Clerk's Document No. 14), TMAIT's response (Clerk's Document No. 17), and the United States' reply (Clerk's Document No. 17). On April 29 2005, the Court held a hearing on the summary-judgment motions at which both parties were represented by counsel. The sole issue in this cause is whether the gain TMAIT realized from its 2002 sale of Prudential Financial, Inc., common stock is "income derived during such year from [TMAIT's] members or transactions with members" for purposes of section 277(a) of the Internal Revenue Code (the "Code"). *See* I.R.C. § 277(a). Having reviewed the summary-judgment motions, responses, and replies, and having considered the applicable law and the arguments of counsel at the April 29 hearing, the Court finds as a matter of law that the gain TMAIT realized from the 2002 sale of Prudential shares is nonmember income and not income derived from members or transactions with members for purposes of section 277(a). The Court concludes that TMAIT's motion for summary judgment should be denied and that the United

States' motion for summary judgment should be granted.

## I. Background

Although TMAIT is a trust created under the laws of the State of Texas, for federal tax purposes, it is classified as a taxable membership organization and is subject to the provisions of Code section 277, which provides that a taxable membership organization is allowed deductions for the taxable year only to the extent of "income derived during such years from members or transactions with members." *Id.* TMAIT's primary function is to provide a variety of group insurance programs for subscribers who are members of the Texas Medical Association and for those who are employed by, or associated with, its members.[1] TMAIT receives subscription payments from its members, of which it retains a portion to cover administrative costs related to the group insurance programs, uses a portion to fund the group insurance programs by purchasing insurance policies from various insurance companies, including Prudential Insurance Company of America ("Prudential"), and uses a portion to pay premiums under various group insurance policies. Insurance benefits are paid directly to TMAIT's members as provided under the various insurance companies' policies. From 1970 until 1999, TMAIT bought group insurance exclusively from Prudential. In 1999, Prudential sold its health-insurance business, including the group health insurance policy issued to TMAIT, to Aetna Insurance Company ("Aetna"). Following the sale, TMAIT bought group insurance from both Prudential and Aetna.

By purchasing policies from Prudential, a mutual company, TMAIT automatically received a "membership interest" in Prudential. This membership interest included the right to vote for Prudential's Board of Trustees as well as the right to participate in any distribution of surplus. In 2000, Prudential converted from a mutual company to a stock company. Under Prudential's demutualization plan, Prudential policyholders with policies in force on December 15, 2000, including TMAIT, would receive shares of common stock of the newly created Prudential Financial, Inc., in exchange for their mutual-company membership interests. On December 18, 2001, pursuant to Prudential's plan, TMAIT exchanged its Prudential membership interest for 839,303 shares of Prudential common stock. There is no dispute that the membership interests held by TMAIT had a zero basis, and therefore, the Prudential shares received a carryover basis of zero. *See* I.R.C. § 358(a).

In 2002, TMAIT sold 209,303 Prudential shares for $33.12 per share, which resulted in a gain of $6,925,811. Also, during 2002, TMAIT paid $6.6 million into Aetna's Insurance Premium Stabilization Fund ("Aetna IPS Fund") on behalf of TMAIT's members, thereby defraying an increase in its members' portion of insurance premiums. On July 9, 2003, TMAIT filed its 2002 tax return, which reflected taxable income of $6.8 million, and paid the tax assessed of $2,325,975.[2] On July 29, 2003, TMAIT filed an amended 2002 tax return, claimed a $6.6 million deduction based on its payment to Aetna's IPS Fund, amended its assessed tax due to $77,280, and claimed a refund of taxes paid in the

---

1. TMAIT provides group insurance programs, which include medical, dental, personal accident, life, long term disability, long term care, and office overhead insurance coverage, for its members and their dependents.

2. TMAIT paid $2,420,000 to the Internal Revenue Service, $2,325,975 of which was applied against the 2002 tax assessment and $94,025 was to be carried forward and applied to the 2003 estimated tax.

amount of $2,248,695. On April 6, 2004, TMAIT commenced this action against the United States claiming that it is entitled to a tax refund of erroneously paid taxes for 2002 in the amount of $2,248,695. *See* 26 U.S.C. § 6532(a)(I) (no civil action for refund shall be commenced before expiration of six months from date of filing claim nor after expiration of two years from date of mailing by Secretary to taxpayer of notice of disallowance of part of claim to which suit relates).[3] The United States answered and denies the allegations in TMAIT's complaint. Both parties move for summary judgment.

## II. Analysis

This Court has jurisdiction over TMAIT's complaint. *See* 28 U.S.C. § 1346(a)(1) (district court has concurrent jurisdiction with United States Court of Federal Claims regarding actions against United States for recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir.2000) (internal

quotations and citations omitted). When both parties move for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Ford Motor Co. v. Texas Dept. of Transp.,* 264 F.3d 493, 498 (5th Cir.2001) (citing *Taylor v. Gregg,* 36 F.3d 453, 455 (5th Cir.1994)). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996), and only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. Internal Revenue Code Section 277(a)

Resolution of the parties' motions for summary judgment center on the interpretation and application of the following portion of Code section 277, which pertains to deductions incurred by certain membership organizations in transactions with its members:

> In the case of a social club or other membership organization which is operated primarily to furnish services or goods to members and which is not exempt from taxation, *deductions for the taxable year* attributable to furnishing

---

**3.** TMAIT's complaint alleges that as of the date of filing, more than six months have passed since it filed the claim for refund and that the Internal Revenue Service has neither granted nor denied its claim. The United States' motion for summary judgment provides that the Service denied TMAIT's claim for refund. Although the record lacks any direct evidence that the Service denied TMAIT's claim, it is undisputed that TMAIT commenced this action within the applicable limitations period.

services, insurance, goods, or other items of value to members shall be allowed only to the extend of *income derived during such year from members or transactions with members.*

*See* I.R.C. § 277(a) (emphasis added). At issue is the interpretation of the clause "income derived during such year from members or transactions with members," and specifically at issue is the term "derived," which is not defined in the Code.

## B. The Motions For Summary Judgment

### 1. TMAIT's motion

TMAIT moves for summary judgment contending that, based on the unusual facts regarding its 2002 sale of Prudential shares, the gain realized from the sale is "income derived during [2002] from members or transactions with members" and, therefore, it properly took the 2002 $6.6 million payment to the Aetna IPS Fund as a deduction for the year. *See* I.R.C. § 277(a). TMAIT also contends that the clause "income derived during such year from members or transactions with members" should be broadly interpreted, contrary to the Tax Court decision in *Concord Consumers Housing Cooperative v. Commissioner,* 89 T.C. 105, 1987 WL 42460 (1987).

TMAIT argues that the following sequence of events establishes that the gain realized from the sale of its Prudential shares is income derived from its members: (1) TMAIT members transferred subscription payments to TMAIT requesting that TMAIT purchase insurance policies for its members; (2) TMAIT purchased insurance policies from Prudential on behalf of its members; (3) as a result of TMAIT's purchase of the Prudential policies, TMAIT received (a) insurance policies and (b) Prudential membership interests; (4) TMAIT's membership interests in Pru-

dential, derived from its purchase of insurance policies for its members, were exchanged for Prudential shares resulting from demutualization of Prudential; and (5) TMAIT then sold its Prudential shares derived from the purchase of insurance on behalf of its members, thereby producing taxable income from its members in 2002. TMAIT contends that but for its purchase of the Prudential insurance policies on behalf of its members, TMAIT would not have received nor sold the Prudential shares.

Further, TMAIT contends that the gain realized from the sale of its Prudential shares was a return to its members of a portion of their subscription payments, and was, essentially, a recycling of its members' portion of their subscription payments that went toward TMAIT's payment to Prudential of excess premiums. TMAIT cites Revenue Ruling 71–233, for the proposition that receipt of stock in exchange for member interests in a mutual insurance company is not an investment. *See* Rev. Rul. 71–233, 1971 WL 26956 (IRS RRU), 1971–1 C.B. 113. Therefore, contends TMAIT, because the Prudential shares were not an investment, there can be no return on capital, and the gain can only be characterized as a return of excess premiums paid.

### 2. United States' motion

The United States moves for summary judgment and contends that based on the facts presented, as a matter of law, the gain from TMAIT's 2002 sale of the Prudential shares was nonmember income and was not income derived from its members. As summary-judgment proof, the United States includes TMAIT's financial statements for the years ended October 31, 2002 and 2001. The United States contends that TMAIT properly characterized the gain from the 2002 Prudential shares

sale as an investment on its financial statements, and properly characterized the gain from the sale as a capital gain from the sale of an investment on its original 2002 tax return. The United States contends that there is no need to look beyond the surface of TMAIT's sale of Prudential shares, as the transaction is nothing more than it appears to be, a sale of stock to third parties, with the resulting income from the sale coming from nonmember third parties. The United States contends that as a matter of law the $6,925,811 gain from TMAIT's sale of Prudential shares, came from nonmember purchasers, that the sale of the Prudential shares was the sale of an investment to nonmembers, and was not "income derived during such year from members or transactions with members" of TMAIT for purposes of section 277(a) of the Code. The United States contends that, because TMAIT lacks sufficient member income in 2002, TMAIT cannot deduct the $6.6 million in member expenses in 2002 pursuant to section 277.[4]

### 3. *Concord Consumers v. Commissioner*

Initially, this Count addresses *Concord Consumers v. Commissioner*, which is the seminal case that addresses section 277(a) and provides a helpful legal analysis.[5] 89 T.C. 105, 1987 WL 42460 (1987). The United States contends that the analysis utilized in *Concord Consumers* was proper and accurately reflects the legislative intent and purpose underlying section 277(a), which is to narrowly define membership income to mean only gross income *received directly* from its members or transactions with members. TMAIT contends *Concord Consumers* interprets the clause "income derived" too narrowly, does not follow properly the legislative history of section 277, and was wrongly decided. Additionally, TMAIT contends that *Concord Consumers* does not apply to the facts presented, because the income at issue here is different from the interest income at issue in *Concord Consumers*.

Although the *Concord Consumers* opinion has not been relied upon or cited by a federal district court, the *Concord Consumers* court's analysis of the legislative purpose and interpretation of section 277(a) has been relied upon and referenced repeatedly by the Tax Court. In determining the deference to give Tax Court decisions, this Court notes that the Tax Court exercises judicial power to the

---

**4.** The United States does not dispute the fact that TMAIT's $6.6 million payment to Aetna's IPS Fund may be taken as a deduction to offset membership income. The United States contends that TMAIT cannot take the deduction in 2002, however, because TMAIT failed to have that amount of income from its members or transactions with its members to offset the $6.6 million payment to Aetna's IPS Fund.

**5.** The parties also refer to *Buckeye Countrymark, Inc. v. Commissioner*, 103 T.C. 547, 1994 WL 619342 (1994) and *Shore Drive Apts., Inc. v. United States*, No. FL 75–542–Civ–CA, 1976 WL 1181 (M.D.Fla. July 16, 1976) (unpublished order). In *Buckeye Countrymark*, the court determined that nonexempt cooperatives are not "membership organiza-

tions" within the meaning of section 277, therefore, section 277 does not apply to Buckeye Countrymark. *See* 103 T.C. at 581. In *Shore Drive Apartments*, without analysis or discussion, the district court held that income from municipal bonds was not income derived from members for purposes of section 277. 1976 WL 1181. As the *Shore Drive Apartments* order is unpublished, this Court takes judicial notice of it, but affords it no precedential value. *See Gray ex rel. Rudd v. Beverly Enters.-Miss.*, 390 F.3d 400, 407 n. 7 (5th Cir.2004). Additionally, the Court notes that the *Buckeye Countrymark* court refers to a few other cases addressing section 277 issues in which the Tax Court turned to legislative history for guidance. *See* 103 T.C. at 564.

exclusion of any other function, and that it construes statutes passed by Congress and regulations promulgated by the Internal Revenue Service. *Freytag v. Comm'r,* 501 U.S. 868, 891, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). The Tax Court's function and role in the federal judicial scheme closely resemble those of the federal district courts and it exercises its judicial power in much the same way as federal district courts exercise theirs. *Id.; see also Flight Attendants Against UAL Offset v. Comm'r,* 165 F.3d 572, 578 (7th Cir.1999) ("The present Tax Court operates pretty indistinguishably from a federal district count.") Tax Court decisions are not subject to review by federal district courts, rather, like judgments of the federal district courts, Tax Court decisions are appealable only to the regional United States court of appeals, where they are reviewed in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. *Freytag,* 501 U.S. at 891, 111 S.Ct. 2631 (citing I.R.C. § 7482(a)). Although the Fifth Circuit has not recently commented on a federal district court's deference to Tax Court decisions, it has recognized the Tax Court's special expertise and held that an interpretation by an agency charged with the administration of a statute is entitled to a substantial degree of deference. *Yarbro v. Comm'r,* 737 F.2d 479, 483 (5th Cir.1984).

In *Concord Consumers,* the Tax Court considered an issue of first impression, and addressed the narrow issue of whether interest income earned on statutorily mandated cash reserves held by a taxable membership organization was income derived from members or transactions with members for purposes of section 277. *See* 89 T.C. 105, 1987 WL 42460. The *Concord Consumers* court analyzed section 277(a) as a deduction deferral, not a deduction disallowance provision. *Id.* at 116, 1987

WL 42460. Section 277 limits deductions (attributable to furnishing services, goods, or other items of value to members) to the extent of membership income in a given year. *Id.* The court found lacking in the Code any definition that would be helpful in interpreting the clause "income derived . . . from members or transactions with members," and because there was no authority or case dispositive on the issue, determined that it was proper to look to the plain language of the statute and its legislative purpose in order to construe the clause so as to give effect to congressional intent. *Id.* at 122, 1987 WL 42460. The court further noted that the purpose of section 277 for nonexempt organizations is essentially the same as that of section 512(a)(3) for exempt organizations, in that both sections prevent their respective types of organizations from escaping tax on their investment and nonmember income by offsetting such income with losses incurred in providing goods and services to members. *Id.* at 121, 1987 WL 42460. The court concluded that the purpose of section 277 is accomplished by limiting deductions in any taxable year for expenses incurred in providing goods and services to members to the extent of the income derived during such year from members or transactions with members and stated, "We have found nothing to indicate that Congress intended that phrase [income derived from members] to include all income from sources substantially related to the function of the organization." *Id.* Finally, the *Concord Consumers* court concluded that because the interest income at issue was not *received from* members or came to Concord Consumers in a transaction *with* members, such income constituted nonmembership income under section 277. 89 T.C. at 122–21 (emphasis added).

In *Buckeye Countrymark, Inc. v. Commissioner,* the Tax Court referred to the

*Concord Consumers* court's approach and analysis of section 277(a). *See* 103 T.C. 547, 564–68, 1994 WL 619342 (1994). Although the ultimate section 277(a) issue in *Buckeye Countrymark* differed from that before the *Concord Consumers* court,[6] the *Buckeye Countrymark* court noted that the tax policy objective of section 277 was to prevent an affected organization from avoiding tax on investment or other outside income by conducting its membership activities at a loss and using the loss to offset nonmembership income. *Id.* at 566, 1994 WL 619342 (see *also Associated Master Barbers & Beauticians v. Commissioner,* 69 T.C. 53, 72, 1977 WL 3654 (1977)).

This Court recognizes that the income at issue in *Concord Consumers* is interest income while the income at issue in this cause is TMAIT's gain from its stock sale. However, this Court finds the discussion in *Concord Consumers* regarding the tax policy and legislative purpose of section 277 instructive and helpful.

TMAIT contends that unlike the interest income in *Concord Consumers,* the gain in this cause is a return to TMAIT of excess premiums paid to Prudential and is not a gain on an investment. TMAIT argues that the following chain of events reflects that the source of TMAIT's gain from the sale of Prudential shares was member income that initially was paid to Prudential for use in Prudential's statutory surplus: TMAIT paid member income to Prudential in exchange for insurance coverage; Prudential used those payments to pay claims and maintain a statutorily mandated surplus; Prudential recognized that this surplus was attributable to TMAIT's members by issuing TMAIT a Prudential membership interest; Prudential demutualized and in doing so exchanged TMAIT's member interest for Prudential stock; the amount of stock TMAIT received was based on its contribution to Prudential's surplus-the amount of excess premiums TMAIT paid; thus when TMAIT sold the Prudential shares, it recovered the excess premiums TMAIT had paid to Prudential. The Court notes that TMAIT's argument and chain of events, which TMAIT contends shows that the gain it realized from the sale of Prudential shares is made up solely of returned excess premiums, is conclusory and is unsupported by competent summary-judgment proof.

TMAIT also contends that Revenue Ruling 71–233, stands for the proposition that receipt of stock in exchange for member interests in a mutual insurance company is not an investment. Rev. Rul. 71–233, [97] WL 26956 (IRS RRU), 1971–1 C.B. 113. TMAIT argues that, because the Prudential shares are not an investment, there can be no return on capital, and the gain from the sale of the Prudential shares can only be a return of excess premiums paid. The United States responds to this contention arguing that TMAIT misstates the holding of Revenue Ruling 71–233. The United States contends that the ruling speaks of what is not an investment only with respect to the interest a policyholder has in the insurance company before a reorganization and the issuance of stock. In reviewing Revenue Ruling 71–233, the Court notes that it provides that stock issued in the course of a reorganization has a zero basis because the payment of premium for an insurance policy is not an investment in the assets of the insurance company. The revenue ruling, however, is silent regarding the status of stock that is issued to a policyholder during a reorganization other than to clarify that it has a zero basis.

---

**6.** *See supra,* note 5.

Further, the United States responds that according to a transaction statement sent to TMAIT by Prudential after demutualization, the number of shares of stock issued was determined based on "factors such as the type of life, annuity or health policy or contract you owned, the face value, and how long you owned it." There is no evidence that Prudential's formula included factoring in any amount of excess premiums paid by its policyholders. Additionally, the United States responds that the Prudential shares do not represent only excess premiums paid by TMAIT but also include excess premiums paid by other policyholders and other investment income. Further, argues the United States, even assuming the gain represented a return of excess premiums, there is no evidence that TMAIT ever paid this amount in excess premiums.

The Court notes no summary-judgment proof that the gain TMAIT realized from the 2002 sale of Prudential shares consisted solely of excess premiums. Additionally, the Court notes no summary-judgment proof detailing TMAIT's claim that it paid to Prudential excess premiums in the amount of $6,925,811.

### III. Findings and Conclusions

What the summary-judgment record reflects is that on its financial statements, TMAIT treated the gain it realized from the 2002 sale of Prudential shares as a "realized investment gain." There is no evidence before this Court that indicates the 2002 sale of Prudential shares is anything other than a sale of common stock to third parties, with the resulting income from the sale coming from nonmember third parties. Further, even if TMAIT's gain from the 2002 sale of the Prudential shares could be characterized as income from a source substantially related to the function of TMAIT, this Court finds nothing in the caselaw or legislative history

indicating that Congress intended the phrase "income derived in such year from members or transactions with member" in section 277(a) to encompass such income.

■■ This Court holds as a matter of law that the gain TMAIT realized from the sale of the Prudential shares in 2002 is nonmember income and is not "income derived in such year from members or transactions with members" for purposes of section 277 of the Code. The Court further holds that *Concord Consumers* properly identifies the legislative purpose of section 277, which is to prevent membership organizations from escaping tax on their investment and nonmember income by only allowing member income to be offset with expenses incurred in providing goods and services to its members. Based on the record, this Court holds that TMAIT has failed to prove as a matter of law that the gain TMAIT realized from the sale of Prudential shares in 2002 was income derived from its members or transactions with its members for purposes of section 277(a) of the Code. TMAIT's motion for summary judgment will be denied. On the other hand, this Court holds that the United States has proved as a matter of law that the gain realized by TMAIT from its 2002 sale of Prudential shares, was nonmember income and was not derived from TMAIT's members or transactions with its members for purposes of section 277(a) of the Code.

### IV. Conclusion

TMAIT has failed to prove as a matter of law that the gain it realized from the 2002 sale of Prudential shares is income "derived during such year from its members or transactions with its members" for purposes of section 277(a) of the Code. The United States has established that there exists no genuine issue of material fact and has shown as a matter of law that for tax year 2002, the gain TMAIT realized from

the 2002 sale of Prudential shares was nonmember income and was not income derived during such year from its members or transactions with its members for purposes of section 277(a) of the Code. Consequently, TMAIT cannot deduct in 2002 its $6.6 million expense incurred for insurance for its members. In accordance with the foregoing:

**IT IS ORDERED** that TMAIT's Motion For Summary Judgment (Clerk's Document No. 9) is DENIED.

**IT IS FURTHER ORDERED** that United States' Motion For Summary Judgment (Clerk's Document No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that TMAIT's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FINALLY ORDERED** that all further relief not expressly granted is **DE-NIED**.