In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3162

Jerome Konen,

Plaintiff-Appellant,

v.

International Brotherhood of
Teamsters, Local 200,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 619--Charles N. Clevert, Judge.

Argued February 16, 2001--Decided June 25, 2001


   Before Easterbrook, Manion, and Diane P.
Wood, Circuit Judges.

   Manion, Circuit Judge.    Jerome Konen
sued his Union, the International
Brotherhood of Teamsters, Local 200,
alleging that the Union breached its duty
of fair representation in violation of
the Labor Management Relations Act
("LMRA"), and unlawfully retaliated
against him for alleging wrongful conduct
by Union officials in violation of the
Labor Management Relations and Disclosure
Act ("LMRDA"). The Union moved for
summary judgment. The district court
granted the motion, concluding that
Konen's claim under the LMRA was untimely
and that the Union did not violate the
LMRDA because it never disciplined Konen.
Konen appeals. We affirm.

I.

   Jerome Konen was a member of Teamsters
Local Union No. 200 ("Local 200" or "the
Union") when he started working as a
truck driver for Russel Metals in January
1996. Russel Metals and Local 200 were
parties to a collective bargaining
agreement ("CBA") governing the terms of
Konen's employment. Local 200 is managed
by its president, Seb Busalacchi, and
secretary-treasurer, Frank
Busalacchi.Joseph Cifaldi was the Local
200 business representative assigned to

Russel Metals.

   In October 1998, Konen drafted and circulated a petition among his co-workers that advocated the replacement of Cifaldi as the business representative. The petition read:

To whom it may concern, We as Local 200 members would like our business agent Joe Cifaldi replaced with a new business agent. Due to numerous accounts of mis-representation presently and during contract negotiation in September of 1997.

Konen personally asked all of his co-workers to sign the petition. Konen also delivered a copy of the petition to the leadman at another Russel Metals facility, who circulated it among members of the bargaining unit. When Konen circulated the petition, he did not explain what "numerous accounts of misrepresentation" had occurred.

   After he collected the signatures and before he submitted the petition, Konen drafted an additional page of notes involving issues that he wanted to discuss with Union officials. Because Konen did not include this page with the petition, his co-workers did not see the page of notes when they received the petition. The additional page stated in part:

Business agent and union stewards Dan Ruper & Todd Schill took money from company to push to get contract through-- quoted by Tod Schill to Damen Albers & Scott Kasabusky all currently employed at Castle Metals.

Konen took the signed petition and page of notes to the Union Hall on November 2, 1998. He handed the petition to Frank Busalacchi, secretary-treasurer of Local 200. Busalacchi indicated to Konen that he would look into the matter. Konen then handed Busalacchi the additional page of notes, saying, "These are some of the issues." Konen added, "I don't know if it's true or not. It's something I was told. I don't know if it's even worth investigating." Busalacchi told Konen that it was a serious allegation, and that he would make sure that it was addressed immediately.

The following day, Frank Busalacchi gave the petition and page of notes to Local 200 president Seb Busalacchi ("Seb") and asked him to look into the allegations as soon as possible. Seb told Frank Busalacchi that he planned to set up a meeting with the Company to find out if there was any validity to the payoff accusations. Seb also met with Cifaldi to discuss the allegations. Seb asked Cifaldi if he accepted a bribe from Russel Metals to settle the 1997 CBA. Cifaldi called the allegation "entirely false." Seb also asked Cifaldi to notify the Company of the allegations and to set up a meeting with the Company to discuss the matter.

Cifaldi contacted Daniel Ruper, Konen's supervisor at Russel Metals. Ruper participated in the 1997 negotiations as a Union steward, but has since taken a supervisory position with Russel Metals. Cifaldi informed Ruper about Konen's allegations, and said that he would provide Ruper with a copy of the petition.

On November 4, 1998, Konen was called into a meeting with Ruper, Plant Manager Charlie Brown, and Union steward Tom Moe. At the meeting, Konen admitted that he authored the bribery allegation. He also asserted that the separate page of allegations was not part of the petition, to which Brown responded, "Well, that doesn't matter." Konen then acknowledged that he had no proof of the alleged misconduct, and that it was wrong for him to hand in the page of allegations. Brown suspended Konen pending further investigation.

The next day, Konen called Cifaldi to inform him that he had been suspended. Cifaldi advised Konen to file a grievance over the suspension. He also asked Konen to come to the Union hall for a meeting with Union and Company representatives about the bribery allegations.

At the meeting, Cifaldi and Seb Busalacchi represented Local 200, and Brown and Ruper represented the Company. The Union requested Company representatives to be present because the allegations in Konen's notes implicated both the Union and the Company in wrongdoing. Seb asked the Company representatives if they were aware of information that would substantiate the

bribery allegations; they responded that they were not aware of any such information. Seb also asked Konen whether he had any evidence to substantiate his allegations. Konen responded by apologizing, admitting that he had no evidence to support his allegations, and that he never should have written them./1 Konen also asserted that the page of allegations was not part of the petition. But he also acknowledged that he made a mistake, wanted to see the whole thing go away, and would go to the workplace to apologize to everyone.

After concluding its investigation, Russel Metals decided to terminate Konen. That decision was made by Plant Manager Brown and Corporate Industrial Relations Manager Bob Rohrer. Rohrer, who had the final authority to terminate Konen, stated that he fired Konen because he be lieved that Konen's allegations directly maligned Russel Metals and the way it deals with unions. Rohrer concluded that Konen's conduct constituted dishonesty under the terms of the CBA, and that Konen was subject to immediate discharge.

Russel Metals informed Konen of its decision in a November 6, 1998 letter signed by Plant Manager Brown, which stated in part:

Your employment is being terminated for dishonesty. You have admitted to personally preparing and disseminating in our workplace an employee petition that contains false, misleading, factually untrue and serious allegations of improper and unlawful actions being taken by representatives of the Company and Union during the Collective Agreement negotiations that occurred in 1997.

Before Konen received the letter, Cifaldi had called him to notify him of his termination and to advise Konen to file a grievance. According to Konen, Cifaldi indicated that he was angry at him, but he told Konen that his personal feelings toward him did not matter and that it was still Cifaldi's job to represent him. Konen filed a grievance on November 11, 1998, and a grievance meeting was scheduled for November 23.

Prior to the grievance meeting, Konen met with Cifaldi and a Union steward. Cifaldi asked Konen how he could attack

the termination decision. Konen offered no suggestions, but reiterated that the page of notes was not part of the petition. Konen apologized again about the matter, and told Cifaldi that he was willing to do whatever was necessary to put the incident behind him.

Brown and Ruper represented Russel Metals at the November 23 grievance meeting. Brown again asked Konen if he authored the document containing the bribery allegations; Konen affirmed that he did write the allegations. Then Brown reaffirmed that Konen was terminated because the document he authored was dishonest and slanderous. Cifaldi asked Konen if he had a defense for his actions. Konen did not give an answer. Instead, he apologized and said that he should not have written the statements.

Later that day, Cifaldi sent Konen a letter informing him that the Union decided to deny his grievance. Konen'sattorney wrote to the Union, requesting Local 200 to submit Konen's grievance to arbitration. Local 200's counsel responded by letter dated December 7, 1998, that the Union decided not to arbitrate Konen's grievance, and that the grievance procedure was at an end. No one has brought internal Union charges against Konen for the incidents that led to his discharge.

Konen sued Local 200 on June 3, 1999, alleging that the Union breached its duty of fair representation under sec. 301 of the LMRA, 29 U.S.C. sec. 185(a), and unlawfully retaliated against him for alleging wrongful conduct by Union officials, in violation of the LMRDA, 29 U.S.C. sec. 411 et seq. The Union moved for summary judgment. The district court granted the Union's motion, concluding that Konen's LMRA claim failed because it was untimely, and that his LMRDA claim failed because Local 200 never retaliated against Konen, as he was never disciplined by the Union but has retained all the rights and status of a full Union member. Konen appeals.

II.

Konen argues on appeal that the district court erred in granting summary judgment for the Union. We review de novo the district court's decision to grant

summary judgment for Local 200, Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1241 (7th Cir. 1997), construing all facts, and drawing all reasonable inferences from those facts, in favor of Konen, the non-moving party. Oest v. Illinois Dep't. of Corrections, 240 F.3d 605, 610 (7th Cir. 2001). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A.  The LMRA Claim

The district court granted summary judgment for the Union on Konen's LMRA claim, concluding that the claim was time barred because Konen failed to file it within the six-month limitations period. Konen's LMRA claim "'accrues from the time a final decision on [his] grievance has been made or from the time [he] discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance.'" Chapple v. National Starch & Chemical Co. and Oil, 178 F.3d 501, 505 (7th Cir. 1999) (quoting Richards v. Local 134, Int'l Bhd. of Elec. Workers, 790 F.2d 633, 636 (7th Cir. 1986)). According to the district court, the limitations period started to run on November 24, 1998, when Konen was informed by Local 200 that the Union was denying his grievance. But that letter did not clearly state whether the Union would arbitrate the grievance, which is the final step in the grievance process under the Union contract. Konen challenges the district court's decision, arguing that the limitations period did not begin to run until December 7, 1998, the date of Local 200's letter stating that the Union would not proceed to arbitration with his grievance. Hence, Konen claims that his suit was timely filed on June 3, 1999, within the six-month limitations period beginning on December 7, 1998. Because it appears that the November 24 letter was sufficiently vague about whether the Union had decided not to proceed to arbitration, and thus whether "no further action would be taken on [Konen's] grievance," Chapple, 178 F.3d at 505, we conclude that the suit

was timely filed. We will thus address the merits of Konen's LMRA claim.

Konen contends that the Union breached its duty of fair representation by refusing to arbitrate his grievance. To state a claim against the union for breach of its duty of fair representation, a plaintiff must establish that the union's action was arbitrary, discriminatory, or taken in bad faith. McKelvin v. E.J. Brach Corp., 124 F.3d 864, 867 (7th Cir. 1997) (citing Air Line Pilots v. O'Neill, 499 U.S. 65, 67 (1991)). Konen first argues that the Union made an arbitrary decision not to proceed to arbitration. In support of his contention, Konen claims that the termination letter from Russel Metals implied that the Company erroneously believed that he had disseminated his page of bribery allegations with the petition,/2 and thus Local 200 overlooked that viable basis to challenge his termination. Konen also alleges that the Union's decision was arbitrary because he never made a defamatory or slanderous statement, as he told Frank Busalacchi that he did not know whether the bribery allegations that he authored were "true or not." The Union's position is that it denied Konen's grievance because he admitted to authoring and submitting false bribery allegations without having any evidence to support the allegations, and because he offered no defense for his actions.

Our review of whether a union acted arbitrarily in deciding not to pursue a grievance or arbitration is "'highly deferential.'" McKelvin, 124 F.3d at 867 (quoting Air Line Pilots, 499 U.S. at 78). A union's actions are deemed arbitrary only if they are "so far outside a 'wide range of reasonableness' as to be irrational." McKelvin, 124 F.3d at 867 (quoting Air Line Pilots, 499 U.S. at 67). Applying this standard, "we will 'not substitute [our] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.'" McKelvin, 124 F.3d at 867 (quoting Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995)). "'This wide degree of deference is warranted because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative.'" McKelvin,

124 F.3d at 867 (quoting Ooley v. Schwitzer Div., Household Mfg., Inc., 961 F.2d 1293, 1302 (7th Cir. 1992)). Therefore, "'so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless (and the union did not then treat substantively similar grievances differently from the plaintiff's), the decision cannot be regarded as arbitrary.'" McKelvin, 124 F.3d at 867–68 (quoting Trnka v. Local Union No. 688, 30 F.3d 60, 61 (7th Cir. 1994)). Konen's burden on summary judgment, in other words, is not just to establish that his position is as plausible as the Union's, but to show that the union's position "'could eventually be deemed not even colorable.'" McKelvin, 124 F.3d at 868 (quoting Trnka, 30 F.3d at 61).

Konen has not met his burden here. At the November 4 meeting, when Konen asserted that his page of bribery allegations was never circulated with the petition, Plant Manager Charlie Brown responded, "Well, that doesn't matter." Konen admitted that he authored the bribery allegations, which alleged criminal misconduct and seriously impugned Russel Metals, Local 200, and the participants in the 1997 labor agreement negotiations. Konen also admitted that he distributed the bribery allegations to Local 200 officials, and that he had no evidence to support the allegations. Moreover, Konen provided Cifaldi with no suggestions on how he could defend his conduct, except to apologize and admit that he should not have written the allegations. Because Konen brought to Union officials a document containing baseless allegations of criminal misconduct by Company and Union officials, and he offered no viable defense for his actions, the Union's decision not to arbitrate his grievance was not irrational.

We also see no evidence of arbitrariness by the Union when it decided not to proceed to arbitration with Konen's claim that because he made an oral disclaimer that he did not know whether his written allegations were "true or not" when he submitted them, he was never dishonest, and never made defamatory or slanderous allegations against the Company or the Union. The fact is that Konen submitted

written allegations of serious criminal misconduct by Company and Union officials, and that he had no evidence to support the allegations. Konen's oral disclaimer did not alter the written allegations that he submitted to Unionofficials. Thus, the Union did not act irrationally when it decided not to proceed to arbitration with this claim.

Konen further argues that the Union's decision not to arbitrate his grievance was made in bad faith. Allegations of bad faith require us to consider the Union's subjective motivation behind its decision not to arbitrate Konen's grievance. McKelvin, 124 F.3d at 868. For Konen to survive summary judgment, he must identify conduct by Union officials that would support a reasonable inference of bad faith. See Crider, 130 F.3d at 1243.

Konen claims that because Local 200 officials, especially Cifaldi, indicated that they were angry at Konen for making the bribery allegations, Cifaldi acted in bad faith when he decided not to arbitrate Konen's grievance. But the fact that Cifaldi may have been angry with Konen does not support an inference of bad faith because Konen has offered no evidence suggesting that Cifaldi's anger affected his representation of him. See McKelvin, 124 F.3d at 868-69. Cifaldi advised Konen to file a grievance, consulted with him on how to challenge his termination, and attended the grievance meeting. But Konen offered Cifaldi no defense for his conduct, and admitted that his allegations were baseless and that he was wrong to submit them. The fact that Cifaldi decided not to arbitrate Konen's indefensible position is not evidence of bad faith. Because Konen has failed to show that the Union's decision not to arbitrate his grievance was arbitrary or made in bad faith, his LMRA claim fails.

B. The LMRDA Claim

Konen also challenges the district court's denial of his LMRDA claim. Title I of the LMRDA establishes the "rights of Union members to freedom of expression without fear of sanctions by the Union." Finnegan v. Leu, 456 U.S. 431, 435 (1982); see 29 U.S.C. sec.sec. 411 et seq. Section 411(a)(2) of the Act provides that "Every member of any labor

organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions" concerning union policies. 29 U.S.C. sec. 411(a)(2). The Act also protects members from being fined, suspended, expelled, or "otherwise discipline[d]" for "exercising any right to which [they] are entitled under the provisions of this chapter." 29 U.S.C. sec. 529.

Local 200 does not dispute that Konen exercised expressive rights protected by the LMRDA. The Union argues, however, that it never disciplined Konen within the meaning of the Act. The Supreme Court has stated that "by using the phrase 'otherwise discipline,' Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules." Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 91 (1989). The Court also determined that the statute's "specifically enumerated types of discipline--fine, expulsion, and suspension--imply some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." Id. at 91-92. See also id. at 92 n. 15 ("Congress meant 'discipline' to signify penalties applied by the Union in its official capacity rather than ad hoc retaliation by individual Union officers.").

Konen contends that the Union disciplined him in violation of the LMRDA when Local 200 "caused" his termination from Russel Metals. According to Konen, Union officials caused his termination by misleading Russel Metals into believing that Konen had disseminated his page of bribery allegations at the workplace. Konen claims that his termination letter supports this contention because the letter implied that the Company believed that he disseminated the bribery allegations at the workplace. Konen also asserts that Ruper, although no longer a union member, was a long term union "brother" of Cifaldi who would take issue with any member who may challenge Cifaldi. Thus, Konen is suspicious of Cifaldi's call to Ruper at his home about Konen's allegations instead of contacting

a representative in the Company's labor relations department during normal business hours. Konen claims that Cifaldi acted to set him up for termination rather than to protect him.

Konen's LMRDA claim is unavailing. First of all, Konen has not shown that the Union caused his termination. It is undisputed that Company officials made the decision to terminate Konen, and there is no evidence in the record that Local 200 representatives misled the Company into believing that Konen circulated his page of allegations with the petition. The apparent error in the termination letter does not support a reasonable inference that Union members misinformed the Company. At the November 4 meeting, plant manager Brown stated that it did not matter to him that Konen never circulated his allegations with the petition. Additionally, Cifaldi's decision to investigate the allegations by first notifying Ruper does not create a reasonable inference that the Union conspired with the Company to terminate Konen. It is undisputed that Rohrer and Brown (not Ruper) made the decision to terminate Konen. And the record amply demonstrates that the Company made a unilateral decision to discharge Konen because he authored and submitted to Union officials a document containing baseless allegations of criminal misconduct by Company and Union officials. All Konen really asserts is his own belief that Union members retaliated against him by arranging his termination, but that does not create a triable issue. See Camporeale v. Airborne Freight Corp., 732 F.Supp. 358, 366 (E.D.N.Y. 1990), aff'd, 923 F.2d 842 (2d Cir. 1990) (union member's belief that he was retaliated against was insufficient to create a triable issue).

Furthermore, Konen was never disciplined by the Union. Russel Metals made a unilateral decision to discharge Konen, which was not a disciplinary act by his Union that would involve the LMRDA. See Camporeale, 732 F.Supp. at 366 ("The LMRDA simply does not offer protection to a Union member from actions undertaken by the employer."); see also Gilmore v. Local 295, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 798 F. Supp. 1030, 1041 (S.D.N.Y. 1992), aff'd, 23 F.3d 396 (2d Cir. 1994)

("where the employer and not the Union disciplines a member for exercising his [sec. 411] rights, the member has no cause of action against the Union under the LMRDA"). Moreover, Cifaldi's decision to notify Ruper of Konen's allegations was an ad hoc decision by a Union official, and did not constitute "punishment authorized by the Union as a collective entity to enforce its rules." Breininger, 493 U.S. at 91. Konen was never subjected to official Union discipline, as he continues to be a member of Local 200, and there is no evidence that his membership rights or status have been diminished in any way. In fact, he currently works for another company that is covered by a CBA with Local 200.

III.

Konen authored and submitted to Union officials a document containing baseless allegations of serious criminal misconduct by Company and Union officials. When the Company terminated him, Konen offered his Union no defense for his actions, except an apology and an admission that he was wrong to have produced and submitted the bribery allegations. The Union was justified in not challenging his termination based on this conduct, and thus Konen's LMRA claim fails. Konen's LMRDA claim is also unavailing because he was never disciplined by Local 200, as he always maintained all of the rights and status of a full Union member, and there is no evidence that the Union caused his termination. We AFFIRM the district court.

FOOTNOTES

/1 Konen claimed that he wrote the bribery allegations after Damon Albers, a former Russel Metals employee, told him that Todd Schill, another former Russel Metals employee, Unionsteward and member of the bargaining committee, told him that the committee (Schill, Ruper and Cifaldi) had accepted money from the Company to settle the 1997 CBA. Konen further testified that Albers also told him that Schill made the same statement to another former Russel employee, Scott Kasabuske. Albers, Schill and Kasabuske submitted affidavits in which they denied making or hearing any of these statements alleged by Konen.

/2 The letter stated: "You have admitted to personally preparing and disseminating in our workplace

an employee petition that contains false, mis-
leading, factually untrue and serious allegations
of improper and unlawful actions being taken by
representatives of the Company and Union during
the [1997] Collective Agreement negotiations."